W. H. McCLEAN and W. P. HARDISON v. MARTHA A. HARRIS.

1. REDEMPTION. Where land has been sold at execution sale, the right of creditors to redeem from the purchaser at the sale, or of one creditor to redeem from another who had previously redeemed from the purchaser, cannot be cut off by a sale of the land by the judgment-debtor.

2. SAME. *Sale by judgment-debtor.* A sale by a judgment-debtor, of his land which had been sold at execution sale, within the two years allowed for redemption, without having previously redeemed himself, is in effect merely a sale of his equity of redemption; and this although his conveyance purports to be a sale of the entire title.

FROM BEDFORD.

Appeal from the Chancery Court at Shelbyville. THOS H. COLDWELL, Sp. Ch.

IVIE & IVIE for complainants.

R. P. FRIERSON for defendant.

FREEMAN, J., delivered the opinion of the court.

This bill is filed to assert title to a tract of twenty-six acres of land in Bedford county, and have respondent's title declared void, as a cloud on the title of complainants.

The case is this: One Foster, a judgment-creditor of T. B. Allison, had a levy on the land in controversy, under an execution based on a judgment from this court, and the land regularly sold, October 26th, 1875, Foster becoming the purchaser at the sum of $80.00.

One 2nd day of November, 1875, seven days after the purchase by Foster, Allison, the debtor, sold the land to respondent in this case for $425 in notes on one Taylor, and his son, and made her a deed in fee with general warranty of title, under which she was put into possession, "no reference," as the report of the Referees says, "being made to the equity of redemption." Complainants had obtained a judgment before a justice of the peace against Allison, July 24, 1874, for $215.71, on which execution had been issued and levied on this land, April 25, 1875, but this levy was subordinate to the previous levy of Foster. In July, 1876, complainants paid to Foster the amount of his bid, with interest, amounting to $83, evidently for the purpose of redeeming the land as a judgment-creditor of Allison.

Foster, on 15th of August after this, gave complainants a receipt or acknowledgment of the payment of the amount of his bid on the land, referring to the previous sale and purchase by him, concluding as follows: "I hereby authorize the sheriff to execute a deed to them for said land." Complainants also proceeded regularly to advance the amount of their judgment, $215, on said land, crediting the same as required by law, making the sum of $334, at which they now claim to hold the land. The sheriff made a deed to complainants, reciting the above facts, and the time for redemption having expired, complainants bring this bill, and claim they have the better title as against respondent, and that her's was an effort to co-operate with Allison in a fraud to defeat their title.

The deeds and sales all being regular, the question is sharply presented as to whether the redeeming creditor, who redeems from a purchaser of land within two years after his purchase, is defeated of his title by a sale of the land by the original debtor, after the sale and purchase, before the redemption had by another *bona fide* or judgment-creditor of the original debtor?

It is assumed in argument, as well as by report of the Referees, that the transaction was a redemption of the land by complainants from Foster, and the case is made to turn in the report upon the question whether it was a redemption or a sale by Foster to complainants. Holding that it was a redemption and not a sale, the chancellor's decree is reported as erroneous, which went on the theory that it was a sale by Foster of his interest under his purchase at the execution sale, and he thereby obtained the better title.

We need but say, in passing, that this distinction is, to say the least of it, merely a verbal one, giving different names to what in fact, and all essential qualities, is but the same thing. Whether a party buys from the purchaser at the sale, and simply pays what may be contracted between them, or pays the amount of his bid, and then advances a debt by way of judgment under the statute, he is still but a purchaser of the right obtained under the original sale, and stands in the shoes of the party whose right he buys. If this party obtained a defective title, the redeeming [as well as purchasing party gets only a

defective title, so that, practically, so far as the na-
ture of the title is concerned, the two transactions
would be identical.    In either case the party thus
obtaining a title from the purchaser, would get but
his title, and hold it subject to redemption, as pro-
vided by section 2949 (new Code), as "one claiming
under him."

It is assumed, both in argument and report of
the Referees, that under the cases of *Huffacre* v.
*Bowman*, 4 Sneed, 98, and *Hepburn* v. *Kerr*, 9 Hum.,
727, the law is adjudicated to be, that if the debtor
sells or releases his right of redemption after the sale,
before another creditor has redeemed from the pur-
chasing creditor, that all further right of redemption
is gone on the part of his creditors, notwithstanding
the two years given such creditors in which to re-
deem has not expired.    This is the reasoning of Judge
McKinney, in the conclusion of the case of *Huffacre*
v. *Bowman*, 4 Sneed, 98, but is purely *dictum*.    In
fact, the learned judge so understands it, as he says
on this question, "but as this case does not in the
pleadings assume this aspect, it were needless to pur-
sue the discussion upon this point."    In other words,
the case did not call for or admit of the adjudication
of the question, because not raised by the pleadings
nor, we may add, by the proof.

The case was a sale of the land of Bowman under
a deed of trust in favor of Kincaid, who became the
purchaser; afterwards, within two years from the trust
sale, an arrangement was made between Huffaker, Kin-
caid, the purchaser, and Bowman, by which Huffacre

advanced Kincaid his bid, paid Bowman $150, and thereupon Kincaid conveyed the land back to Bowman, and Bowman at the same time conveyed to Huffacre in fee, · the transaction being an entire one, in consummation of a previous agreement of the parties. In the meantime, one Cornelius Bowman had a decree against James E. Bowman, the original debtor, and in less than twelve months, while his right of lien to all lands of his debtor by statute was in force, caused an execution to be levied on the land, and claimed he thereby got a superior title to Kincaid. But the court held that "by the agreement of all parties, preceding the execution of the deeds, no interest was to be vested in Bowman; he was used merely as the medium for passing the title to Huffacre, and that the merely momentary seizin of Bowman never vested him with any title, and so the lien of the judgment and levy of execution was ineffective to convey any title, the real title having passed from Kincaid, the original purchaser, to his vendee, Huffacre. This is clear, and is all that was actually adjudicated in the case.

The case of *Hepburn* v. *Kerr* only held on this question, that after a sale of land under an execution, the debtor might assign his interest to a trustee for the benefit of his creditors, and such assignment would pass his equity of redemption, and the trustee is entitled to redeem. This principle is one never doubted, and has been repeatedly approved by our courts. See 2 Cold., 169; *Weakley* v. *Cockrill*, 2 Tenn. Ch., 319; also 2 Tenn., 303.

The theory of the argument of Judge McKinney in, *Huffacre* v. *Bowman,* is "that the right of another creditor to redeem is an equity of such creditor to be wrought out" through the equity of the original debtor, and in this view he concludes that when that debtor has parted with or released his right, the right of his other creditors is also gone. If the premise was correct, the conclusion would follow. But is it correct? With perfect respect for that learned judge, we think it is not.

By the statute (new Code, sections 2949, 2950, 2951, 2952 and 2953), the right of redemption is given to the debtor whose land is sold, and then equally to his creditors. "The *bona fide* creditor, by judgment or decree, or debt acknowledged by deed, when he purchases, has the right to advance his bid, and credit his debt with the amount so advanced," and then holds the land subject to redemption at the price bid and his advance: 2950. By next section such *bona fide* creditor who redeems from the purchaser at the sale holds the "property subject to redemption by the original *debtor,* or any other of his creditors," upon the same terms on which it was redeemable in the hands of the first purchaser, or any one claiming under him, etc. Here the right of the creditor to redeem is given as specifically as the right of the original debtor is recognized, but is in no way made dependent on the continuance of that right in such debtor. Then by 2953 there is a general provision definitely settling this right: "Real estate sold for debt, and made redeemable, *shall* continue redeemable

to the *debtor* and his *creditors* for two years after the sale, upon the terms aforesaid (that is as prescribed in former sections), no matter how often it had been previously redeemed." This language gives the right to the creditors as fully as to the debtor, in the precise same terms, and continues the right in each independently of the other for two whole years. But it is conceded that when the debtor himself redeems, and thus gets the title back in himself, the right to redeem by his judgment-creditor is gone, because entirely unnecessary, as the land is immediately subject to his execution. But how his mere assignment or transfer of the equity of redemption to a third party, or sale and conveyance purporting to convey the absolute title can have this effect, we are totally unable to see. As correctly held in *Hepburn* v. *Kerr*, 9 Hum., 729, the assignment by the debtor only served to vest in his assignee all the equities and rights of the assignor, but certainly it could not vest more than he had, and in addition defeat the right of another, to-wit, the creditor, whose right was as well recognized by law as that of his assignee, and so this court held, following the logical result of the premise, that the right of such an assignee was simply the right to redeem, that is, he stood in the shoes of his assignor, clothed with all his rights, but no higher. He purchased what the debtor had, and no more. The debtor had the right of redemption for two years by the statute, and standing in his shoes his assignee could exercise that right within the same period and on the same terms. In this case there

was an absolute conveyance to the trustee for payment of debts.     This view is inevitably correct, unless we assume that a party having only a right of redemption can convey a larger estate than he has in himself.     The fact that he assumes to convey the fee cannot change the principle, it being too clear to need authority or argument that such conveyance only operates to convey the estate of the conveyor, and is inoperative as to any thing beyond that, the doctrine of innocent purchaser as administered by a court of equity being out of this case.

The principle we have laid down was substantially held and applied by this court in the case of *Bank* v. *Ridgeway,* 3 Lea, 623–4–5.     In that case a creditor by judgment had attached the equity of redemption of the debtor whose land had been sold, and then redeemed by another creditor.     This redeeming creditor, the bank, filed its bill to enjoin the confirmation of the sale of the equity or right of redemption. The court, by Judge Turney, said: "Ridgeway, the purchaser of the right of redemption, took just such interest as Eddins, the debtor, had at the time of the attachment, nothing more, nothing less.     At that time Eddins had the right to redeem the land from the original purchaser or a subsequent redeeming creditor.     This right continued for two years from the sale.     Until it was exercised any judgment-creditor had the clear legal right to redeem from him who had last redeemed.     If Eddins had failed to redeem, then, at the end of two years, the last redeeming creditor would take the title in fee, and the right

of redemption by Eddins be forever gone." It was then laid down, as resulting from these premises, that the purchaser of this equity of redemption stood in the shoes of Eddins, and was compelled to pursue the same course, but having failed to redeem within the two years, his right was gone. A purchaser under a decree of a court on attachment proceedings of the title owned by the debtor, would certainly get as much as the creditor himself could sell. In fact it is axiomatic that a creditor in such case takes the precise estate of his debtor, but can never get more, except, perhaps, in the single case of a party who has sold and conveyed his property, but the vendee has failed to register his deed before levy of process by a creditor.

The principle of the above case is correct, and the only legitimate conclusion that can be deduced from the provisions of our law of redemption. The view contended for opens the way for the debtor at all times to defeat his other creditors by a sale of his right of redemption, either for money or to a favorite creditor, while the judgment-creditors cannot levy on the land, but are compelled to stand on their right of redemption for two years, as in this case. Immediately after the first sale for a small sum, the creditor may sell the land, get the proceeds, and bid defiance to his other creditors.

It is clear complainants hold the title of Foster, the first purchaser. Foster could certainly not have been defeated of his title by the sale to defendant. On what principle that right is to be cut down in

McClean and Hardison v. Harris.

the hands of his assignee, it would be difficult to see. He could not refuse to receive his money from these creditors when tendered in redemption. He has it, and they have got what the law authorized them to compel him to give; and yet it is claimed he has got nothing, and his right defeated by the act of the original debtor, whose title had been reduced by law to a simple right of redemption, and no more, by the sale to Foster. This involves too many incongruities to be sustained as a part of our jurisprudence. Public policy favors the result we have maintained, as by the construction we have given, a failing debtor's land is thus made to discharge its full value in debts by repeated redemptions, and frequently, as we have seen, more than its value, creditors redeeming at high figures rather than lose their entire debts. The opposite view, as we have said, will enable the debtor, if he chooses, to sell, get the money, and put it beyond the reach of his creditors, and thus be the fruitful source of fraud.

The result is, the decree of the chancellor is affirmed, and report of Referees disapproved. A decree will be drawn in accord with this opinion, with costs against the defendant.