SOUTHWEST GAS CORPORATION, Appellant and Cross-Respondent, v. KAREN AHMAD, Respondent and Cross-Appellant.

No. 13891

August 31, 1983                    668 P.2d 261

*Fitzgibbons & Beatty,* and *Joshua M. Landish,* Las Vegas, for Appellant and Cross-Respondent.

*John Peter Lee,* and *Daniel Marks,* Las Vegas, for Respondent and Cross-Appellant.

## OPINION

By the Court SPRINGER, J.:

Ahmad recovered a judgment against Southwest for breach of her oral employment contract. The issue in this case is whether or not the parties are bound by a termination clause appearing in the Employee Information and Benefits Handbook provided to Ahmad by Southwest. The district court found that the handbook created employment and contractual rights between the parties and that Southwest violated the contract.

There is testimony by Ahmad that she had knowledge of the termination section of the handbook "throughout the length of [her] employment." The fact that the company issued such handbooks to its employees and that Ahmad had knowledge of the pertinent provisions therein supports an inference that the handbook formed part of the employment contract of the parties.

There is also evidence of formal delivery of the handbook after the commencement of employment. Her continued employment after formal delivery of the handbook provides sufficient consideration for modifying the employment agreement by inclusion of the handbook provisions. *See* Yartzoff v. Democrat-Herald Publishing Co., Inc., 576 P.2d 356 (Or. 1978); 1A A. Corbin, *Corbin on Contracts* 122, § 175 (1963).

*Yartzoff* is similar to the instant case. There, summary judgment was entered in favor of the employer. The judgment was reversed on the ground that material issues of fact existed as to whether an employment handbook issued by the employer was part of the employment contract. A handbook was delivered by the employer to the employee several days after commencement of employment. The court held that even under such circumstances a fact finder could find that the handbook was intended by the parties to be part of the original contract of employment. The court went on to hold that even if the book were not part of the original contract, it could be considered as a subsequent modification of the contract. The court reasoned that since the employee was free to leave her employment, her continued employment after receiving the handbook provided sufficient consideration for the modifications. We agree with this reasoning and hold that the district court's action is supportable on the ground that the handbook could be found to be part of the original contract or to be a modification supported by sufficient consideration. Either way the district court's judgment should be affirmed. *See* Hotel Riviera, Inc. v. Torres, 97 Nev. 399, 632 P.2d 1155 (1981). It is so ordered.

MOWBRAY and GUNDERSON, JJ., concur.

STEFFEN, J., with whom MANOUKIAN, C. J., joins, dissenting:

I respectfully dissent.

My review of the record has revealed no basis in law or the evidence upon which to sustain the decision of the district court. Additionally, it would seem that my brethren in the majority have propelled Nevada law above and beyond those

jurisdictions who have carefully engrafted limited exceptions to the common law doctrine regarding "at-will" employment.

Nevada has not as yet seen fit to legislatively abrogate the common law rule concerning "at-will" employment. This rule, which remains in general effect throughout the United States, provides that employment for an indefinite term may be terminated at any time for any reason or for no reason by either the employee or the employer without legal liability. Phillips v. Goodyear Tire & Rubber Co., 651 F.2d 1051 (5th Cir. 1981). Although some jurisdictions retain the rule without exception, most have limited the employer's right to terminate at-will employees to situations where such terminations do not undermine a firmly established public policy or statutory objective. Roberts v. Atlantic Richfield Co., 568 P.2d 764 (Wash. 1977); Alford v. Life Savers, Inc., 315 N.W.2d 260 (Neb. 1982); Bruffett v. Warner Communications, Inc., 692 F.2d 910 (3rd Cir. 1982); Brower v. Holmes Transp., Inc., 435 A.2d 952 (Vt. 1981); Petermann v. International Brotherhood of Teamsters, etc., 344 P.2d 25 (Cal.App. 1959); Chin v. American Tel. & Tel. Co., 410 N.Y.S.2d 737 (1978). In the instant case, it is uncontroverted that Ahmad was employed on an indifinite basis with Southwest. We are thus not faced with a breach of an employment contract for a specified term. Nor do we have basis for deciding a public policy limitation on the common law terminable at-will doctrine.

The trial judge found that Ahmad was discharged for cause. Nevertheless, Southwest was assessed damages by reason of its asserted failure to abide by the termination provisions of its Employee Information and Benefits Handbook. The trial court's decision was thus bottomed on either a contract or estoppel theory. In my considered judgment, neither applies.

It is clear on the record that the handbook at issue was in no sense part of the bargaining process by which Ahmad accepted employment with Southwest. At best, Ahmad became generally aware of the handbook after her employment, and with respect to the termination provision, not until at least a year after her hiring date.[1] The majority nevertheless concludes that

---

[1] The record actually reflects a clear admission by Ahmad that she first became aware of the termination provision of the handbook after her discharge when another employee directed her attention to it. In respondent's words, "the day I came in to pick up my letters of recommendation [subsequent to her discharge] a woman from the word processing department told me they could not terminate me without giving me notice and it was at the time that one of the girls in the office opened to the termination section and told me to read it." The question was then asked: "[s]o you really had no knowledge whatsoever of that section until you were terminated?" Respondent replied: "I had no reason to have knowledge of it, no."

since Southwest issued the handbook to its employees, and since "Ahmad had knowledge of the pertinent provisions therein," an inference arises that the handbook formed part of the employment contract of the parties. The case of Yartzoff v. Democrat-Herald Publishing Co., Inc., 576 P.2d 356 (Or. 1978), is then cited by the majority as support for such an "inference." *Yartzoff,* I suggest, affords no such support. The Oregon court had before it a case disposed of by the lower court on summary judgment. In reversing the entry of summary judgment against the employee, the reviewing court held that at trial, a jury might infer from the employee's facts that the "statements in the handbook were intended and considered by both parties to be a part of the terms of plaintiff's original contract of employment." Finally, the Oregon court disclaimed any predisposition as to the merits of the case by anything contained in its opinion. I am unaware of any rule or principle of law which would create an inference of a contract resulting only from evidence of the unilateral dissemination of an employees' handbook coupled with an employee's awareness of the provisions or contents of such a handbook. Certainly the *Yartzoff* opinion provides no support or basis for such an inference.

The majority's alternative assertion that formal delivery of a revised handbook to Ahmad constituted a modification of the original contract of employment supported by the consideration of continued employment is also unsupported by the facts as well as the law. Here, delivery of the revised handbook to which the majority refers took place in April, 1980, some two years after respondent was hired. There was neither an express nor an implied representation by Southwest that the handbook was to be a part or modification of any agreement between the parties. Indeed, Ahmad has neither contended nor proved any such modification.

There further appears to be no basis for the majority's finding of reliance on or consideration for any modification of the contract. There was no evidence of bargaining between the parties for a contract modification, nor any indication that after having received the manual, Ahmad in any way changed her position or acted in any manner except to fulfill her regular job responsibilities for Southwest. The fact that Ahmad continued working after having received the manual, although she was under no obligation to do so, cannot be viewed as consideration for a contract modification. Here, the non-exercise of a pre-existing legal right was neither bargained for nor given in exchange for any promise. It certainly did not work to Ahmad's detriment, nor did it confer any new benefit on

Southwest. Ahmad's continued employment falls short of being consideration for a contract modification. *See Restatement of Contracts 2d* §§ 17(1), 71, 73. Corbin on *Contracts* §§ 152-209, Williston on *Contracts,* 3rd ed. §§ 99-107. *See also* Sargent v. Illinois Institute of Technology, 397 N.E.2d 443 (Ill.App. 1979); Edwards v. Citibank, N.A., 418 N.Y.S.2d 269 (1979); Williams v. Biscuitville, Inc., 253 S.E.2d 18 (N.C. 1979); Simmons v. Westinghouse, 311 So.2d 28 (La.App. 1975); Zagar v. Field Enterprises Educational Corporation, 374 N.E.2d 897 (Ill.App. 1978).

In the instant case, the trial judge failed to make clear the theory upon which he based appellant's liability. In one sentence, the judge found evidential substantiation of reliance on the termination provision by respondent. The record simply does not support such a finding. To the contrary, as noted previously, respondent was unaware of the termination provision of the handbook until after her discharge. *See* note 1. It is thus apparent that if the trial court reached its conclusion under a theory of estoppel, the essential element of detrimental reliance was absent.

The majority divined from the decision of the district court an award of damages based upon the breach of a contract of employment. In that regard, the trial judge did find that Ahmad did not receive "due warning" of her termination. The lower court concluded, I believe erroneously, that the termination provision of the handbook required warning of termination and an opportunity to correct an unsatisfactory performance as a predicate to termination. This Court, if indeed the exercise has relevance, may interpret the language of the termination provision under a plenary standard of review. The termination provision of the handbook reads as follows:

*TERMINATION*

A regular employee may not be terminated without cause. Termination for cause can occur only after notification from the employee's department head (except in the case of direct insubordination or gross misconduct) of unsatisfactory performance. The employee must have been given an opportunity to correct it. An employee terminated for failure to correct unsatisfactory performance after due warning shall never be denied the right to discuss the matter with the manager in charge of that activity.

Temporary, part-time or probationary employees may be terminated without cause at any time.

I have sought in vain for language within the referenced provision which requires "due warning" or indeed, any prior warning or notice of termination. The provision does require

"due warning" or notification of unsatisfactory performance and an opportunity to correct same. Both conditions were satisfied in the instant case. The record reveals that Ahmad's supervisors informed Ahmad of her numerous deficiencies on many occasions. Her "formal" supervisor, Marilyn Bollinger, invited Ahmad to her office to apprise her of the need for better administration and greater accuracy. Bollinger later met with Ahmad to admonish her to stay at her desk area and not spend time "wandering" in other departments. In the interim, the attorneys for whom Ahmad rendered service complained to both Ahmad and Bollinger regarding Ahmad's deficiencies. In short, the record strongly reflects the fact that Ahmad was notified on several occasions of her unsatisfactory performance. The record further reflects substantial forebearance by Southwest in working with Ahmad in the hope of achieving a satisfactory overall performance level. In an effort to salvage an otherwise unsatisfactory situation, Southwest unsuccessfully attempted to relocate Ahmad in other of its departments prior to her termination.

In view of the foregoing, and after having thoroughly reviewed the record, I must conclude that Southwest's conduct was in substantial compliance with the termination provision of its handbook.

There are, however, other reasons why I must dissent from the majority opinion. First, without evidence that the parties actually intended the handbook to be part of the employment contract, I deem it unsound to incorporate it therein by judicial fiat. The handbook provided by Southwest was simply a unilateral publication of company policies and employee benefits. It did not purport to be a contractual document, but rather a current directory of policies, information, procedures and benefits. At the outset of the handbook, Southwest made clear the transient, non-vested nature of the publication by stating: "employee information and benefits are frequently revised to reflect changing circumstances and the Company reserves the right to make changes without prior notice." Under these circumstances it transcends law, reason and logic to arrogate to the handbook the status of an implied or express contract of employment.

Numerous cases have rejected attempts to engraft employee manuals or handbooks onto employment contracts. *See, e.g.,* Weiner v. McGraw-Hill, Inc., 442 N.Y.S.2d 11 (App.Div. 1981) (employment application indicated employment would be subject to employees handbook; held, the application did not prohibit McGraw-Hill from unilaterally amending or withdrawing any of the provisions in the handbook); Johnson v. National Beef Packing Company, 551 P.2d 779 (Kan. 1976)

(employee sought to avoid general rule regarding termination at will by asserting employee handbook as an express or implied contract; held, handbook only a unilateral expression of company policies and procedures not bargained for by the parties and any benefits conferred by it were mere gratuities; no meeting of the minds was evidenced by unilateral publication of company policy); Williams v. Biscuitville, Inc., *supra,* (held, employee handbook provision regarding termination after verbal and written warning not exclusive manner of terminating where policy unilaterally implemented by employer and subject to change by employer); Schroeder v. Dayton-Hudson Corp., 448 F.Supp. 910 (E.D.Mich., S.D. 1977) (held, employee's handbook cannot be construed to be a contract; its purpose is to inform employees of benefits, privileges and corporate policies); Sargent v. Ill. Institute of Technology, *supra,* (held, employee manual defines duties, responsibilities and serves as code of conduct; by agreeing to be bound by handbook guidelines, employee merely agrees to properly perform his duties—court found no consideration to support predischarge hearing requirement); Edwards v. Citibank, N.A., *supra,* (employee contended employee handbooks and manuals comprised written contract; held, such a position unsupported by logic or law—first, lacking in mutuality; second, hornbook law that employment contract of indefinite term is terminable at the will of either party at any time; third, written manuals do not form employment contract since they do not exclusively and completely define terms and conditions of employment, its duration or rate of compensation; consequently, manuals are merely broad internal policy guidelines which cannot be held to include exclusive termination procedures).

Those few cases, including *Yartzoff,* which seem to validate the proposition that employee handbooks may constitute part of the employment contract, generally do so on the basis that the provisions of the handbook were intended by the parties to be part of the contract. There is no evidence or support in this record for such a conclusion here. Indeed, Ahmad's complaint failed to allege incorporation of the handbook as part of the employment contract. Instead, she asserted termination without cause and in violation of "defendant's personnel policies" as a basis for relief. In this setting I am unable to support the premise that Southwest's dissemination of a company policy manual to an employee claiming a general awareness thereof equals a contract by inference.

Second, even if we were to condone the majority position as being within the outer reaches of the law, it would be unwise to

so extend ourselves. Judicial restraint in the area of employer-employee relations subserves the best interests of society. The legislature is best equipped to discern the public pulse through extensive hearings, analyses and debate involving multi-faceted groups having specific interests in the subject.

Ironically, the consequences of the majority position are not difficult to project. Employers who have structured personnel handbooks to reflect beneficial employee policies will most likely retrench and designedly avoid the web of unintended liability fashioned by this Court's decision. It is, I submit, unfortunate that these foreseeable consequences are spawned by the circumstances of the instant case, where the employee was terminated for cause in substantial conformity with company-established termination procedures.

Although it is clear that I find no basis in fact or law for an award of damages, I nevertheless concur with the trial court's approach to the determination of damages, if such were justified.

Because the trial court's decision was unsupported by the facts and the law, I would reverse.

