DENA SMITH, Appellant, v. PETE CLADIANOS and ZANTE, INC., a Nevada Corporation, dba SANDS HOTEL AND CASINO, Respondents.

No. 17945

March 31, 1988                    752 P.2d 233

*Jonathan H. King* and *Arnold Brock, Jr.*, Reno, for Appellant.

*Laxalt & Nomura,* and *Mary Phelps Dugan,* Reno, for Respondents.

## OPINION

By the Court, Springer, J.[1]:

Appellant Dena Smith ("Smith") was employed by the Sands Hotel-Casino ("Sands"). After approximately four and one-half

---

[1]This appeal was previously dismissed as an unpublished order of this court. Pursuant to a request, we have determined that our decision should be issued in a public opinion. Accordingly, we hereby issue this opinion in place of our order dismissing this appeal filed January 21, 1988.

years of employment, respondent Peter Cladianos ("Cladianos") fired her for paying funds to C/P Air in contravention of direct orders prohibiting such action. Asserting that the prohibitory order was issued after such payout, Smith claims that she was wrongfully terminated. Finding, in essence, that Smith was an "at-will" employee, the district court granted summary judgment against Smith.

Initially, Smith contends that an implied contract for employment existed in view of the parties' conduct, the Sands' personnel policies, the length of Smith's employment and reliance by Smith on the employee handbook. In support, Smith relies on Aluevich v. Harrah's, 99 Nev. 215, 660 P.2d 986 (1983). Smith's reliance, however, is misplaced because *Aluevich* concerned a lease contract—not an employment contract.

It is clear from a review of the record that Smith was an at-will employee.[2] In her deposition, Smith admitted that no written contract of employment existed. She said that she was employed full-time with no specific termination date. Moreover, she admitted that she was not a permanent employee. If desired, Smith could leave her employ with the Sands at any time.

Generally, an at-will employment contract can be terminated whenever and for whatever cause by an employer without liability for wrongful discharge if the employment is not for a definite term and if there is no contractual or statutory restrictions on the right of discharge. Smith insists that a provision found in the employee handbook contractually restricts Cladianos' ability to discharge her without first hearing Smith's explanation.[3]

Smith contends that the handbook is part of the original oral employment contract. *See* Southwest Gas Corp. v. Ahmad, 99 Nev. 594, 668 P.2d 261 (1983). Even if we were to consider the provisions of the employee handbook as part of Smith's employment contract with the Sands, no provision in the handbook

---

[2]An at-will employee can properly be discharged without cause at the will of the employer. *See* K Mart v. Ponsock, 103 Nev. 39, 732 P.2d 1364 (1987).

[3]The "employment handbook" provision underlying Smith's position provides:

> PROBATIONARY PERIOD—All employees are hired on a 90-day probationary period. This probationary period benefits both you, the employee, and the Sands. It will allow you to evaluate the Sands and for your supervisor to evaluate your performance in the job you have been assigned. However, at any time during this probationary period your supervisor feels that you will not be able to meet the qualifications and standards necessary for the job you have to perform, he may terminate your services without prior notice.

modifies the Sands' common law right to discharge Smith at its whim.

The handbook provision upon which Smith relies so heavily concerns the initial 90-day probationary period of employment. Because Smith had long since completed her probationary employment period, such provision has no relationship to the manner of Smith's termination. Furthermore, a review of the employee handbook reveals no provision which would modify the common law employment termination rights flowing from her at-will employment contract. Consequently, it was not error for the district court to find the absence of any procedure either spelled out or guaranteed in the handbook which would restrict the Sands' at-will employment termination rights.

In the alternative, Smith contends that it was error for the district court to grant summary judgment against her because there exist genuine issues of material fact with regard to her tort claim of bad faith discharge. We disagree.

In K Mart v. Ponsock, 103 Nev. 39, 732 P.2d 1364 (1987), this court recognized the tort of bad faith discharge where the employer breached the implied covenant of good faith and fair dealing. *K Mart,* 103 Nev. at 47, 732 P.2d at 1370. The underlying rationale for extending tort liability in that case was founded upon the premise that ordinary contract damages did not call K Mart to account adequately for its grievous and perfidious conduct. *K Mart,* 103 Nev. at 49, 732 P.2d at 1371. To serve its own financial ends, K Mart, "[a]fter involving itself in a relationship of trust and special reliance between itself and its employee and allowing the employee to rely and depend on continued employment and retirement benefits . . . wrongfully and in bad faith, breached the employment agreement." *K Mart,* 103 Nev. at 51-52, 732 P.2d at 1372. We severely restricted the tort remedy afforded in *K Mart,* however, to those rare and exceptional instances where the employer's conduct goes well beyond the bounds of ordinary breach of contract liability. *K Mart,* 103 Nev. at 48, 732 P.2d at 1370.

In the case at bar, Smith was nothing more than an at-will employee. As such, she was subject to employment termination at any time, so long as the purpose for termination did not offend the public policy of the State of Nevada. Unlike the employee in *K Mart,* Smith was fired for insubordination. Smith makes no suggestions that such discharge was for any untoward purpose or for retaliation.[4] Rather, Smith contends that her dismissal was a

[4]Furthermore, except in narrowly circumscribed circumstances—*e.g.*, where an employer has fired an employee in apparent bad faith, for its own financial advantage, in order to deprive the employee of his promised

result of a misunderstanding. Viewing the incident in that light, we see no bad faith on the part of the Sands. Consequently, a claim for bad faith discharge does not lie, and thus there exists no genuine issue of material fact with respect to such claim.

Based on a review of the record, as well as for the reasons set forth above, we find no error by the district court in ordering summary judgment against Smith. Accordingly, we affirm the judgment of the district court.[5]

GUNDERSON, C. J., STEFFEN and YOUNG, JJ., concur.

---

expectation of employment benefits; or where the employer has fired an employee to retaliate against him for invoking his legislatively established right to SIIS benefits—this court has never held that an employee can defeat the "at will" character of an employment contract through the invocation of an allegation of "retaliation."

[5]THE HONORABLE JOHN MOWBRAY, Justice, voluntarily disqualified himself from consideration of this case.