Janice R. CORDOVA and Antonio S. Cordova, Plaintiffs,

v.

HARRAH'S RENO HOTEL–CASINO; Holiday Inns, Inc.; Helen Caughell, an individual, Defendants.

No. CV–N–87–23 BRT.

United States District Court, D. Nevada.

Oct. 27, 1988.

John N. Schroder, Reno, Nev., for plaintiffs.

Albert F. Pagni, Ron Jenkins, Nicholas F. Frey, Vargas & Bartlett, Reno, Nev., for defendants.

## ORDER GRANTING SUMMARY JUDGMENT

BRUCE R. THOMPSON, District Judge.

Defendants move to dismiss plaintiffs' complaint alleging gender-based discrimination under 42 U.S.C. § 2000e–2(a) because the facts show no act of discrimination. Plaintiffs filed their action as a result of defendant Harrah's termination of its employment relationship with plaintiff Jan Cordova, a "heavy duty cleaning specialist," on December 11, 1985.

Plaintiff Jan Cordova began her employment as a "cleaning specialist" on September 28, 1976. Four years later, an intrade-

444

partmental transfer placed her in the position of "heavy duty cleaning specialist."

On December 10, 1985, plaintiff was cleaning seat cushions in the Garden Lounge Room at Harrah's, when she found small change and gaming chips. The number of chips is uncertain, but the plaintiff agrees that at least one $25.00 gaming chip was found under a seat cushion. At that time, Steve Shaw who was the casino shift supervisor, had stopped to chat with several off-duty employees at a nearby bar. Plaintiff upon noticing Mr. Shaw, motioned to him to come to her. What transpired next is in dispute. Plaintiff alleges that Mr. Shaw approached her without speaking, and that she pointed to the chip, which he picked up then dropped twice on the floor and gave to her. He then left her without saying a word.

Mr. Shaw, who is no longer employed by Harrah's, remembers noticing the plaintiff waving to him. He went over to her, picked up the coins from the floor (the chips were on the chair), and handed them to her, saying "Congratulations, Jan. This is your lucky day. Be sure you turn them in. I hope nobody claims them." He then left hurriedly to complete some paperwork upstairs, because his shift was ending soon.

Plaintiff claims she was confused by Mr. Shaw's actions, and that as a result of the confusion she put the chip in her pocket and cashed the chip at the end of her shift. After Mr. Shaw discovered that plaintiff had failed to turn in the found monies pursuant to Harrah's policy, he recommended she be terminated. Defendant Helen Caughell, plaintiff's direct supervisor, terminated her the next day.

The "found monies" policy of Harrah's, of which plaintiff states she was aware, stated:

The following procedures will be followed in the event you find any money:
1. Any money found on Harrah's premises will be returned to the customer or employee to whom the money belongs or the container where it belongs.
2. When it is not known to whom or where the money belongs, the money will be immediately turned in to the nearest supervisor in charge of the area or adjacent area.
3. The supervisor will immediately investigate and try to determine if the money belongs to Harrah's, a customer or employee.
   a. If it can be determined to whom the money belongs, the supervisor will turn the money over to him and immediately notify the employee who found the money.
   b. All money found in gaming areas above floor level will be considered Harrah's money.
   c. When the supervisor is unable to make a determination, he will place the money in an envelope and write the following information on the envelope:
      1. Name of person who found the money
      2. Date
      3. Approximate time money was found
      4. Where money was found
      5. Amount of money found (give description of money)
      6. The employee who found the money will be required to sign the envelope verifying the above facts
4. The supervisor will then give the envelope to the Customer Services Shift Supervisor at the Information Booth (Reno), Coat Check (Tahoe) who will handle as follows:
   a. If the amount is over $1.00 and is not claimed within 14 days, the money will be returned to the finder.
   b. If the money has been determined to belong to Harrah's and is $.99 or less, it will be placed in the miscellaneous account (fifth wheel).
   c. If the money has been determined to belong to Harrah's and is $1.00 or more, a paid-in voucher will be made out immediately crediting the money to the miscellaneous account (fifth wheel) and the money placed in the cashier funds.
   d. All claims of found money will be handled by a Customer Services Shift

Supervisor or the Customer Services Supervisor.

e. When two or more persons claim the found money, the Shift Manager, Assistant General Manager or Vice President and General Manager will be notified and he will call the Vice President General Counsel for advise (sic) on how to handle the matter.

5. All found monies are to be turned in to the Customer Service Shift Supervisor at the Information Booth where a ledger on found money will be maintained. The person receiving the money will sign the ledger to acknowledge receipt of the money.

6. All persons having knowledge of found money will keep the facts regarding the finding of the money confidential to reduce the possibility of false claims.

7. The following descriptions will be used to define the use of the words "Money" and "Container" in the above preceding procedure.

a. Money includes gaming tokens, chips, currency, coin, or any form of paper, metal, or token of any other substance which is used in lieu of money at a specified exchange rate.

b. Container will include the following: cash register, money drawer, machine stand, money bag, money tray, counter, table, change apron, wallet or any item from which money is dispensed, deposited, or stored.

The following memorandum to the cleaning department which preceded plaintiff's termination by one year stated:

### IMPORTANT    IMPORTANT IMPORTANT

In the past several weeks we have lost valuable employees due to a violation of the Found Money Procedure.

I strongly emphasize to each employee that it is very important that you are thoroughly familiar with the procedure on found money.

Do not jeopardize your job or career at Harrah's.

PLEASE!

Plaintiff was also aware of defendant Harrah's stated policy of "Prohibited Conduct": "Dishonesty or failure to report an act or plan of dishonesty, whether knowledge of such act or plan is obtained directly or indirectly."

The testimony of the witnesses, including plaintiff, is that the established custom and practice in implementation of the found money policy is for the employee, not the supervisor, to take the money to the Information Booth and turn it in. Shaw's testimony is consistent with that custom and practice.

Plaintiff was fully aware of these procedures, and in fact had followed these procedures ten or eleven times before she was fired. When questioned about why she retained the money, she replied she wasn't thinking straight.

■ Among the defendants named in plaintiffs' complaint is Holiday Inns, Inc., the parent corporation of defendant Harrah's Reno Hotel–Casino. As justification for naming Holiday Inns as a defendant, plaintiffs state Jan Cordova knew she was an employee of Holiday Inns. In other words, plaintiffs have no justification but were merely seeking the deepest pocket. Thus, there being no justification to pierce the corporate veil, summary judgment is proper in favor of defendant Holiday Inns on all causes of action.

■ There are two plaintiffs alleging claims for relief in their complaint. The first is Janice Cordova, the terminated employee. The other is her husband, Antonio Cordova. He claims he is entitled to participate in all of his wife's causes of action on the ground that Nevada's status as a community property state creates a dual participation in all legal claims. This contention is wholly without legal basis. Defendants Harrah's and Helen Caughell are entitled to summary judgment against plaintiff Antonio Cordova on all causes of action.

The basis for federal question jurisdiction is plaintiff Jan Cordova's cause of action alleging discrimination on the basis of sex in violation of 42 U.S.C. § 2000e–2(a). A recent Ninth Circuit decision maps out

the route to be taken by a plaintiff alleging disparate treatment on the basis of gender. Judge Ferguson wrote:

> The complainant in a Title VII case bears the initial burden of establishing a prima facie case. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). In a disparate treatment case, the burden of persuasion always stays with the plaintiff, *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093, but '[t]he court must enter judgment for the plaintiff,' unless the employer produces evidence which rebuts the presumption of discrimination created by the plaintiff's prima facie case. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The City contends that Officer Jauregui failed to establish a prima facie case of disparate treatment.
>
> An individual suffers 'disparate treatment' when he or she is 'singled out and treated less favorably than others similarly situated on account of race or any other criterion impermissible under [Title VII].' *Gay [v. Waiters' and Dairy Lunchmens Union],* 694 F.2d [531] at 537 [ (9th Cir.1982) ]. A plaintiff can establish a prima facie case of disparate treatment through direct proof of intentional discrimination, or by ' "offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act," ... i.e., evidence that indicates that "it is more likely than not" that the employer's actions were based on unlawful considerations.' *Nanty v. Barrows Co.,* 660 F.2d 1327, 1331 (9th Cir.1981) (quoting *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977), and *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)); *Gay,* 694 F.2d at 538. Thus, '[u]nlike a disparate impact case, the plaintiff in a disparate treatment case must show the employer's intent to discriminate, but intent may be inferred from circumstantial evidence.' *Domingo v. New England Fish Co.,* 727 F.2d 1429, 1435 (9th Cir.1984) (citations omitted), *modified,* 742 F.2d 520 (9th Cir.1984); accord *Casillas [v. United States Navy],* 735 F.2d [338] at 342 [ (9th Cir.1984) ] ('Although not determinative alone, admissible impact evidence can be relevant, though often weak, circumstantial evidence of discriminatory intent.'); *Gay,* 694 F.2d at 546 (prima facie case may be made 'without any direct proof of discriminatory motivation.').

*Jauregui v. City of Glendale,* 852 F.2d 1128, 1134 (9th Cir.1988).

To show a prima facie case of disparate treatment, plaintiff Jan Cordova must show that she is a member of a protected class, was subjected to adverse employment actions, and also that a similarly situated unprotected person was treated differently than she. *See Pejic v. Hughes Helicopters, Inc.,* 840 F.2d 667, 672 (9th Cir. 1988). Plaintiff has shown that she is female and has been subjected to an adverse employment action—i.e., termination. Failure to show dissimilar treatment of similarly situated employees justifies judgment in favor of defendants. *See Pejic, supra; Equal Employment Opportunity Commission v. Sperry Corp.,* 852 F.2d 503, 511 (10th Cir.1988) (evidence does not show discrimination because plaintiff was *not* similarly situated); *Shah v. General Electric Co.,* 816 F.2d 264, 270 (6th Cir.1987) (absent proof of similarly situated employees, it is not possible to raise an inference of discrimination by proof other employees were not similarly treated); *Fitch v. R.J. Reynolds Tobacco Co.,* 675 F.Supp. 133, 137 (S.D.N.Y.1987) ("Employees who are dissimilar need not be treated identically").

▪ Plaintiff contends that she has established a prima facie case because she, a female, was terminated and Steven Shaw, a male, who was involved in the incident was not even disciplined. Plaintiff cannot prove a prima facie case by this comparison for several reasons. The job responsibilities of plaintiff and Shaw were very dissimilar. He was the shift manager for the graveyard shift in charge of all operations in the

casino—she was a heavy duty cleaning specialist. His conduct was entirely consistent with the found money policy as it was uniformly interpreted; hers was not. If his conduct in some respect offended the intent of the found money policy, it was an infraction of much lesser magnitude than that of plaintiff. *Reynolds v. Humko Products,* 756 F.2d 469, 472 (6th Cir.1985).

We also cannot ignore the established principle affecting summary judgments: "Conflicts of credibility should not be resolved on a hearing on a motion for summary judgment unless the opponent's evidence is too incredible to be believed by reasonable minds." *Losch v. Borough of Parkesburg, Pa.,* 736 F.2d 903, 909 (3rd Cir.1984); *Allstate Insurance Company v. Cannon,* 644 F.Supp. 31, 34 (E.D.Mich. 1986); *de La Paz v. Danzl,* 646 F.Supp. 914, 920 fn. 14 (N.D.Ill.1986). In this case the testimony of plaintiff of what occurred when Steven Shaw was called over to see the found money is absolutely incredible, not to be believed by reasonable minds, as is the suggested inference that Shaw had somehow indicated that it was appropriate for her to pocket the found money.

Two 1986 Supreme Court decisions govern our conclusions: *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *Anderson* approves the following standards: "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact" (emphasis in original); "if the evidence is merely colorable or is not significantly probative summary judgment may be granted"; "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." And from Celotex: "Rule 56(e) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case,

and on which that party will bear the burden of proof at trial."

In the instant case there has been full discovery. The record is devoid of proof that plaintiff was terminated because of her sex. She was fired for cause, for violation of the found money policy. Summary judgment must be granted on the only federal question claim for relief.

■ Plaintiff also sues on breach of an employment contract, breach of the implied covenant of good faith and fair dealing, and the intentional infliction of emotional distress. To show a breach of employment, plaintiff submits the employee handbook, claiming the "policy" of Harrah's insuring "maximum job security" gave her a right against termination without just cause. Handbooks in Nevada can create employment contracts. However, the provision creating the contract must be specific enough to create the expectation that the employment is not "at-will." *See, e.g., K–Mart Corp. v. Ponsock,* 103 Nev. 39, 732 P.2d 1364 (1987) (contract represented that employee "would remain on the job until he retired as long as he did his job satisfactorily"); *Southwest Gas Corp. v. Ahmad,* 99 Nev. 594, 668 P.2d 261 (1983) (handbook included termination clause proscribing termination without just cause). Plaintiff argues *res judicata* collateral estoppel principles preclude Harrah's from relitigating the issue whether her termination violated the pledge of "maximum job security." *See Mannikko v. Harrah's Reno, Inc.,* 630 F.Supp. 191, 196 (D.Nev.1986). Nevertheless, this specific issue was not addressed in that case. *Mannikko, supra* at 196. This provision does not modify plaintiff's at-will employment contract because "it is a general policy statement and not a specific provision regarding duration of employment or termination procedures as contrasted to those cases where the Nevada Supreme Court has found an employment contract abrogating the at-will employment termination rights. *See K–Mart, supra; Southwest Gas, supra.* Indeed, this case falls within the parameters of Nevada's most recent pronouncement on at-will employment. The Court finds nothing modi-

fying plaintiff's status as an at-will employee. *See Smith v. Cladianos*, 104 Nev. ——, 752 P.2d 233 (1988). In *Smith*, the Nevada Supreme Court wrote:

> [A] review of the employee handbook reveals no provision which would modify the common law employment termination rights flowing from her at-will employment contract. Consequently, it was not error for the district court to find *the absence of any procedure either spelled out or guaranteed* in the handbook which would restrict the Sands' at-will employment termination rights.

(Emphasis added). *Smith*, 752 P.2d at 235. Consequently, defendants are entitled to summary judgment on the issue of breach of an employment contract.

▊ Plaintiff characterizes this case as identical to the situation in *K–Mart*, justifying a claim for "bad faith discharge" in violation of the implied covenant of good faith and fair dealing. *K–Mart* implicitly recognized a cause of action for "bad faith discharge" where it "offends public policy." *K–Mart*, 732 P.2d at 1369. Plaintiff, while paying lip service to the discriminatory discharge claim, casts these facts in the light of K–Mart's discharge "for improper motive of defeating contractual/retirement benefits." Plaintiff's retirement benefits were due to vest nine months after she was discharged. Plaintiff fails to produce evidence showing a nexus between her discharge and the imminent vesting of her retirement benefits. The fact of discharge, and the vesting of retirement benefits are stated. From this, plaintiff argues the Court must conclude Harrah's fired plaintiff because her retirement benefits were about to vest. Plaintiff would have to show that the parties responsible for her termination were aware of the vesting. Plaintiff was terminated for her violation of the found money policy. On the other hand, plaintiff argues that at most it was a misunderstanding. In this respect, our facts comport with *Smith:*

> We severely restricted the tort remedy afforded in K Mart, however, to those rare and exceptional instances where the employer's conduct goes well beyond the bounds of ordinary breach of contract liability. [citation omitted].
>
> In the case at bar, Smith was nothing more than an at-will employee. As such, she was subject to employment termination at any time, so long as the purpose for termination did not offend the public policy of the State of Nevada. Unlike the employee in K Mart, Smith was fired for insubordination.... Smith contends that her dismissal was a result of a misunderstanding. Viewing the incident in that light, we see no bad faith on the part of the Sands.

*Smith*, 752 P.2d at 235.

Plaintiff's evidence of the vesting of retirement benefits fails to withstand defendants' motion for summary judgment. Her evidence of sex discrimination for bad faith discharge fails as well. In evaluating a claim for bad faith discharge, the Court can find no bad faith where an employer believed the testimony of one employee over another. In an analogous claim for bad faith discharge, one court wrote: "Appellant denied the charge [that she committed conduct violating the employer's procedures], and respondent chose to believe other witnesses and to reject appellant's version. This raises no inference of bad faith." *Burton v. Security Pacific National Bank*, 197 Cal.App.3d 972, 243 Cal. Rptr. 277, 281 (1988). Defendants are therefore entitled to summary judgment on plaintiff's claim for bad faith discharge.

Plaintiff has failed to produce any evidence to support a claim for the infliction of emotional distress. *See Star v. Rabello*, 97 Nev. 124, 625 P.2d 90 (1981). Defendants are entitled to summary judgment on this claim as well.

Accordingly,

IT HEREBY IS ORDERED that defendants' motion for summary judgment is granted with the force and effect that this action is hereby dismissed with prejudice.