THE SANDS REGENT, A NEVADA CORPORATION, DBA THE SANDS RENO HOTEL-CASINO; ZANTE, INC., A NEVADA CORPORATION, DBA THE SANDS RENO HOTEL-CASINO, APPELLANTS AND CROSS-RESPONDENTS, PETE CLADIANOS, JR., CROSS-RESPONDENT, v. KATHERINE VALGARDSON AND LOIS R. METZER, RESPONDENTS AND CROSS-APPELLANTS.

No. 18887

July 26, 1989                    777 P.2d 898

---

[2]The Honorable Donald M. Mosley, Judge of the Eighth Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE ROBERT E. ROSE, Justice. Nev. Const. art. 6, § 4.

*Beckley, Singleton, DeLanoy, Jemison & List* and *Franny A. Forsman* and *Charles R. Zeh,* Las Vegas, for Appellants and Cross-Respondents.

*Durney & Brennan,* Reno, for Respondent and Cross-Appellant Katherine Valgardson.

*Goedert & Michaels,* Reno, for Respondent and Cross-Appellant Lois R. Metzer.

## OPINION

*Per Curiam:*

Terminated after a shift manager explained that they were "too old," Valgardson and Metzer filed an action against appellants (the Sands) seeking both compensatory and punitive damages. Following a jury verdict and judgment entered in respondents' favor, the Sands has appealed, urging, *inter alia,* that the calculation of damages below was in error. On cross-appeal, Valgardson and Metzer also claim that the damages calculus is incorrect and

specifically take issue with the lower court's remittitur of punitive damages. Additionally, Metzer and Valgardson claim that Pete Cladianos should not have been dismissed from this action.

Katherine Valgardson was employed by the Sands as a card dealer from 1982 until February 23, 1986. She was fifty-eight years old when she was terminated. Lois Metzer was also a Sands' card dealer and was employed from February 18, 1983, until February 23, 1986. At the time of her discharge, Metzer was fifty-two years old.

Although the testimony presented below was conflicting, the basic thrust of the evidence indicated that in February, 1986, Reno in general, and the Sands in particular, were experiencing a very slow period of economic activity. Charles Kennelly, at the time the Sands games manager, testified that he told Don Dennis, a Sands shift manager, to lay off three people. Kennelly denied that he instructed Dennis to dismiss older dealers. Dennis testified that Kennelly and Cladianos, chief executive officer of the Sands, hired him and that Cladianos wanted Dennis to clean up the "pit"[1] by getting rid of the older people and giving the pit a younger look.

On February 23, 1986, consistent with his understanding of instructions, Dennis fired Valgardson and Metzer because they were "too old." Dennis also told them that if they protested, the Sands would simply find another reason to dismiss them. Termination slips were subsequently placed in corresponding Sands' personnel files marked "No Rehire" and "Quit."

After unsuccessful efforts by the Sands to rehire the dismissed employees, Metzer and Valgardson filed complaints with the Nevada Equal Rights Commission. However, the Commission did not pursue the claims. As a result, Valgardson and Metzer brought this action claiming violations of NRS 613.310 *et seq.* and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* Valgardson and Metzer also sought common-law relief for breach of contract, public policy wrongful discharge and bad faith discharge. *See* K Mart Corp. v. Ponsock, 103 Nev. 39, 732 P.2d 1364 (1987).

During trial, the claims against Cladianos were dismissed. At the conclusion of the trial, general verdict forms, which did not delineate theories of recovery, were given to the jury. The jury returned with a verdict in favor of respondents and awarded Valgardson $80,000 and Metzer $100,000 in compensatory damages. The jury also awarded a lump sum total of $875,000 in punitive damages. However, the punitive damages figure was

---

[1]"An area in which gaming tables are placed in a casino." Webster's Third New International Dictionary 1724 (1971).

later reduced to $350,000 after the Sands moved for remittitur. Metzer and Valgardson accepted the remittitur without waiving their rights to cross-appeal.

As previously stated, the Sands urges on appeal that the calculation of damages below was incorrect. We agree. Specifically, unless the common-law theories of recovery asserted below are sustainable, Metzer and Valgardson are limited to damages available under their statutory theories of recovery.[2] We conclude that common-law theories of recovery are not available to respondents.

First, it is clear that both Valgardson and Metzer were "at-will" employees and as such, had no basis to assert breach of contract or bad faith discharge. Specifically, both breach of contract and bad faith discharge presuppose that the parties had an employment agreement. *See* Smith v. Cladianos, 104 Nev. 67, 69, 752 P.2d 233, 235 (1988); *K Mart,* 103 Nev. at 42, 45, 47-52, 732 P.2d at 1366, 1368, 1369-1373. However, under the facts of this case, Metzer and Valgardson did not have employment tenure and were not contractually entitled to be retained unless dismissed for cause. *Cf. Id.* at 45, 732 P.2d at 1368. Although Metzer and Valgardson suggest that we look to the Sands "employment handbook," we previously stated in *Cladianos* that "no provision in the handbook modified the Sands' common-law right to discharge [its employees] at its whim." 104 Nev. at 68-69, 752 P.2d at 234. In short, no contractual obligation of continued employment existed. *See K Mart,* 103 Nev. at 46 n. 5, 732 P.2d at 1369 n. 5. Hence, neither breach of contract nor bad faith discharge theories are sustainable.

Second, we conclude that age discrimination does not fit into the public policy exception to the "at-will" employment doctrine. In Hansen v. Harrah's, 100 Nev. 60, 675 P.2d 394 (1984), we recognized the presence of tort liability in at-will employment relationships "founded upon strong public policy." The specific problem in *Hansen* was retaliatory discharge for filing a workmen's compensation claim. In this case, we are faced with the challenge of age discrimination. Clearly, Nevada has a public policy against age discrimination.[3] Nevertheless, we do not per-

---

[2]The Sands does not challenge respondents' recovery under either the ADEA or under NRS 613.310 *et seq.*

[3]NRS 233.010(1) provides:

   1. It is hereby declared to be the public policy of the State of Nevada to protect the welfare, prosperity, health and peace of all the

ceive that our public policy against age discrimination is sufficiently strong and compelling to warrant another exception to the "at-will" employment doctrine.[4] Moreover, as noted hereafter, the Legislature has addressed the gravity of violating Nevada's public policy against age discrimination by defining the extent of the remedy available to parties injured by such discrimination. We conclude that age discrimination, as objectionable as it may be, does not rise to the same level as the actionable tortious conduct found in *Hansen* or *K Mart*. In so holding, we reemphasize, as we did in *Cladianos,* that public policy tortious discharge actions are severely limited to those rare and exceptional cases where the employer's conduct violates strong and compelling public policy.[5]

Because respondents' common-law claims are unsupportable, only statutory remedies remain. Under NRS 613.420 and NRS 233.170, respondents were entitled to "back pay for a period not to exceed two years after the date of the most recent unlawful practice." Under the ADEA, a violating employer is liable for wages and benefits from the date of the wrongful termination until the date of the trial, in addition to an equal amount of liquidated damages if the violation was willful. 29 U.S.C. §§ 216(b), 626(b). *See* Cassino v. Reichhold Chemicals, Inc., 817 F.2d 1338, 1348-1349 (9th Cir. 1982).

Evidence was presented which indicates that Valgardson is entitled to $34,505.00 in lost wages and benefits and Metzer is entitled to $62,780.00 in lost wages and benefits. Under the ADEA and the evidence of willfulness in the record, Valgardson

people of the state, and to foster the right of all persons reasonably to seek, obtain and hold employment and housing accommodations, and reasonably to seek and be granted services in places of public accommodation without discrimination, distinction or restriction because of race, religious creed, color, *age,* sex, physical or visual handicap, national origin or ancestry (emphasis added).

[4]*See* Fischer v. Sears, Roebuck & Co., 687 P.2d 587, 589 (Idaho App. 1984) ("The duty not to discharge an employee because of age is solely a creature of statute; no such duty existed at common-law which would allow prosecution of a claim for wrongful discharge from employment because of age."). *See also* Bonham v. Dresser Industries, Inc., 569 F.2d 187, 195 (3d Cir. 1977); Johnson v. United States Steel Corp., 202 N.E.2d 816, 818 (Mass. 1964); Fawcett v. G.C. Murphy & Co., 348 N.E.2d 144, 147 (Ohio 1976).

[5]*See* Foley v. Interactive Data Corp., 765 P.2d 373, 376 (Cal. 1988) ("But the employer's right to discharge an 'at will' employee is still subject to limits imposed by public policy, since otherwise the threat of discharge could be used to coerce employees into committing crimes, concealing wrongdoing, or taking other action harmful to the public weal.").

and Metzer are also entitled to an equal amount of liquidated damages, bringing Valgardson's total damage award to $69,010.00 and Metzer's total award to $125,560.00.

We have carefully considered all other issues raised on appeal and on cross-appeal and conclude that they lack merit. Accordingly, we dismiss respondents' cross-appeal. Further, insofar as the verdict and judgment below are inconsistent with our holding, we reverse and remand to the district court with instructions to enter judgment and award damages to respondents in accordance with this opinion.[6]

---

[6]THE HONORABLE ROBERT E. ROSE, Justice, voluntarily recused himself from participation in the decision of this appeal.