959 F.2d 240
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Nancy LANGLOIS, Plaintiff-Appellant,
v.
HARRAH'S TAHOE, INC., a Nevada Corporation; Holiday
Corporation, a Delaware Corporation, Defendants-Appellees.
 No. 91-15005.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 1992.
Decided April 1, 1992.
 
 Before CHAMBERS, FARRIS and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Nancy Langlois, a former cocktail waitress employed by Harrah's Tahoe, Inc. ("Harrah's"), filed a complaint alleging various state causes of action and sex discrimination and retaliation in violation of Title VII. Following a motion for partial summary judgment, the district court dismissed two of the three pendent state claims on the merits, and refused to exercise its discretionary jurisdiction over the third claim. The district court entered judgment for Harrah's following a bench trial on the Title VII claim. We have jurisdiction over Langlois's appeal under 28 U.S.C. § 1291 and we affirm.
 
 FACTS
 
 3
 Harrah's hired Langlois on June 25, 1985. After working in customer service and the photo lab, Langlois was transferred to the beverage department as a cocktail waitress in May 1986. Langlois worked a "relief schedule," requiring her to serve drinks at any one of a dozen areas in the hotel/casino. The relief schedule enables Harrah's to cover for employee absences and fluctuations in consumer volume.
 
 
 4
 Langlois became pregnant with her second child in March 1986. She refused to take a leave of absence or transfer to another position once she became aware that she was pregnant. Harrah's admitted that its prior policy was to transfer pregnant cocktail waitresses or grant them a leave of absence once they could not fit into their uniforms. The district court, however, found that Langlois was the first waitress who requested to stay in the department during her pregnancy, "and when she did so, the practice was immediately changed. The department altered its policy and accommodated Langlois with a maternity uniform." Memorandum, November 29, 1990, at 8 ("Memorandum").
 
 
 5
 Langlois alleged that Harrah's retaliated against her upon her return from maternity leave because she insisted that she remain on the job through her pregnancy. She claims Harrah's gave her poor work assignments and turned down her applications for transfers and promotions, eventually leading to her constructive discharge on April 2, 1987.
 
 
 6
 After exhausting her administrative remedies, Langlois brought suit in federal district court alleging a violation of Title VII, breach of the implied contract of good faith and fair dealing, tortious (abusive) discharge, and negligent and intentional infliction of emotional harm. The district court dismissed the breach of contract and tortious discharge claims on the merits, and it refused to exercise pendent jurisdiction over the emotional harm claim.[1]
 
 
 7
 The Title VII claim went to trial. The court found that Langlois failed to make a prima facie showing of discrimination under Title VII either before or after her maternity leave, and it entered judgment in favor of Harrah's. Memorandum at 10-11. This appeal followed.
 
 DISCUSSION
 A. Pendent State Claims
 
 8
 1. Breach of Implied Contract of Good Faith and Fair Dealing
 
 
 9
 We review a grant of summary judgment de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Judie v. Hamilton, 872 F.2d 919, 920 (9th Cir.1989).
 
 
 10
 Under Nevada law, an at-will employee cannot assert a claim against her employer for breach of the implied covenant of good faith and fair dealing. D'Angelo v. Gardner, 819 P.2d 206, 211-12 (Nev.1991). The question is whether Langlois presented a genuine issue of material fact regarding her employment status. She did not. As the district court noted, "there is no contention that there was a provision in the [Harrah's employee] handbook which would modify Harrah's common law right to discharge." Order, Oct. 2, 1990 ("Order"). Indeed, Langlois admits that Harrah's handbook includes "a disclaimer of Harrah's intent to incur contract liability." See D'Angelo, 819 P.2d at 209 n. 4 (express disclaimer in handbook may defeat claim of implied employment contract). Moreover, Langlois did not claim in her complaint that she was anything other than an at-will employee, and she did not contest her at-will status in her opposition to Harrah's summary judgment motion.
 
 
 11
 Because there was no issue of material fact regarding Langlois's at-will employment status, the district court properly granted summary judgment in favor of Harrah's on Langlois's contract claim for breach of the implied covenant of good faith and fair dealing.
 
 2. Tortious (Abusive) Discharge Claim
 
 12
 Under Nevada law, "[a]n employer commits a tortious discharge by terminating an employee for reasons which violate public policy." D'Angelo, 819 P.2d at 212. An at-will employee may bring a tortious discharge claim. Id.
 
 
 13
 In 1989, the Nevada Supreme Court held that an at-will employee claiming age discrimination may not bring a claim for tortious discharge. Sands Regent v. Valgardson, 777 P.2d 898, 900 (Nev.1989). Valgardson limited tortious discharge actions "to those rare and exceptional cases where the employer's conduct violates strong and compelling public policy." Id.
 
 
 14
 The Nevada Supreme Court recently clarified the two requirements a plaintiff must satisfy in order to bring a tortious discharge claim. First, the employer, in its discharge of the employee, must have violated the public policy of the state. D'Angelo, 819 P.2d at 216. Second, there must be no adequate statutory remedy available to allow discrimination victims to bring suit and recover tort damages for their injuries. Id. at 217.
 
 
 15
 In both Valgardson and D'Angelo, the employer violated the public policy of the state by discharging the employee. In Valgardson, the employer violated Nevada's public policy against age discrimination. In D'Angelo, the employer violated public policy against forcing employees to work under unreasonably dangerous conditions. We have no doubt that Nevada would hold that sex discrimination also violates the public policy of the state. See Nev.Rev.Stat. § 233.010(1).
 
 
 16
 Valgardson and D'Angelo differed on the second prong of the test, adequacy of a statutory remedy. In Valgardson, the plaintiffs brought suit to recover damages under the Age Discrimination in Employment Act (ADEA) and Nev.Rev.Stat. 613.310 et seq. The D'Angelo court characterized the damages awarded in Valgardson as "tort damages," D'Angelo, 819 P.2d at 217, even though the plaintiffs were limited to double back pay under the ADEA. See Cassino v. Reichhold Chemicals, Inc., 817 F.2d 1338, 1348 (9th Cir.1987), cert. denied, 484 U.S. 1047 (1988) (double damages under ADEA for "willful" violations). "It is quite obvious that the Valgardson plaintiffs were vindicating much more than a mere contractual right to lost earnings." D'Angelo, 819 P.2d at 217.
 
 
 17
 In contrast, the D'Angelo court noted that no Nevada statute authorized an employee to bring a law suit against his employer for forcing him to work under unreasonably dangerous conditions. Instead, the employee had to ask the administrator of Nevada's division of occupational safety and health to seek back pay and reinstatement on his behalf. Id. at 217-18 n. 11. According to the court, this remedy was inadequate because only the administrator could bring the action, and only lost wages (and not general damages) were available. Id. at 217. "It is precisely in such cases, i.e., where no comprehensive statutory remedy exists, that courts have been willing to create public policy tort liability." Id. at 218.
 
 
 18
 The Nevada Supreme Court's decision in Valgardson dictates the outcome of this case. Sex discrimination and age discrimination claims are governed under the same Nevada statutory scheme. See Nev.Rev.Stat. 613.330(1)(a) ("is an unlawful employment practice ... to refuse to hire or to discharge any person ... because of his race, color, religion, sex, age, disability or national origin ...").
 
 
 19
 Langlois's statutory remedy is like that available to the Valgardson plaintiffs. Langlois may bring suit directly; she need not go through an administrator. D'Angelo, 819 P.2d at 217. The damages available to the Valgardson plaintiffs, who were victims of age discrimination, are nearly identical to those available to Langlois, who alleges sex discrimination, except that the Valgardson plaintiffs recovered double back pay under the ADEA for willful violations and Langlois is limited to single back pay. This relatively minor difference is not a basis to distinguish Valgardson, an opinion that the Nevada Supreme Court reaffirmed in D'Angelo. See D'Angelo, 819 P.2d at 216-17.
 
 
 20
 We conclude that the Nevada Supreme Court would bar a tortious discharge claim based upon sex discrimination. Accordingly, the district court correctly dismissed this pendent claim.[2]
 
 B. Title VII Claim
 
 21
 We review for clear error the district court's factual findings that Harrah's did not discriminate or retaliate against Langlois in violation of Title VII. Anderson v. Bessemer City, 470 U.S. 564 (1985).
 
 
 22
 In Title VII cases, the plaintiff must carry the initial burden of establishing a prima facie case of discrimination. Lindahl v. Air France, 930 F.2d 1434, 1437 (9th Cir.1991). In order to prove disparate treatment, "a plaintiff may assert either that the employer's challenged decision stemmed from a single illegitimate motive (i.e., sex discrimination) or that the decision was the product of both legitimate and illegitimate motives." Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1109 (9th Cir.1991) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 244-48 (1989)).[3]
 
 
 23
 The court found that Harrah's did not discriminate or retaliate against Langlois. This finding is not clearly erroneous. Langlois was the first to complain about Harrah's discriminatory policy toward pregnant women, and Harrah's immediately changed the policy when she did so.
 
 
 24
 The court also found that Harrah's did not discriminate against Langlois by giving her poor work assignments. This finding is supported by the record. Harrah's illustrated this point graphically in an exhibit showing the assignments Langlois received to work in the preferred gaming area before her notice of intent to stay, after the notice, and upon her return from pregnancy leave.
 
 
 25
 The court also disbelieved Langlois's testimony that one of her supervisors, Grant Amthor, made discriminatory comments to her after she advised him she was pregnant. Memorandum at 9. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." Anderson, 470 U.S. at 575.
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Langlois argued in her briefs that the district court abused its discretion when it failed to exercise pendent jurisdiction over her state claim for negligent and intentional infliction of emotional harm. Langlois moved for voluntary dismissal of this portion of her appeal after Harrah's agreed not to assert a statute of limitations defense and the district court ruled that Langlois could refile the claim in the event that Harrah's attacked it in state court on jurisdictional grounds. See Order, October 16, 1991
 We grant Langlois's motion for voluntary dismissal of her appeal from the emotional harm claim; accordingly, we do not decide whether the district court abused its discretion in failing to exercise pendent jurisdiction over the claim.
 
 
 [2]
 In her supplemental memorandum, Langlois contends that the court in D'Angelo "held that the federal statutory remedy under Title VII, unlike the remedial scheme under the ADEA, does not offer an exclusive remedy because it does not provide for the possibility of an award of general damages, but only allows lost wages." This statement is misleading; the D'Angelo court does not even mention Title VII
 
 
 [3]
 Langlois asserts that the district court erred in applying the formula from Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981) instead of the Price Waterhouse standard. We need not reach this issue because both standards require that a plaintiff make a prima facie case of discrimination. Langlois did not make this prima facie showing