AMERICAN BANK STATIONERY AND AMERICAN STANDARD, INC., APPELLANTS, v. JOHN FARMER, RESPONDENT.

No. 19912

October 25, 1990                                        799 P.2d 1100

*McAuliffe, White, Guinan, Kahan & Young,* Reno, for Appellants.

*Jack E. Kennedy & Associates,* Reno, for Respondent.

## OPINION

By the Court, ROSE, J.:

In April of 1989, a jury awarded John Farmer $410,478.88 in damages for wrongful termination by American Bank Stationery. We affirm the court's judgment entered pursuant to the jury's verdict.

### FACTS

In August of 1979, John Farmer (Farmer) applied for the position of plant manager at American Bank Stationery's (ABS) manufacturing plant in Sparks, Nevada.[1] Bill McDonald

---

[1]ABS is a subsidiary of American Standard Incorporated. Its major business is printing and selling checks and other forms to banks.

(McDonald), the hiring authority for ABS, informed Farmer that he was looking for an individual who was willing to make a long term commitment to the company. McDonald's superiors expressed concern to McDonald that Farmer had held numerous jobs in a short period of time.

Despite his superiors' concern, McDonald offered Farmer the job as plant manager for ABS. When McDonald made the offer he believed that Farmer could only be terminated for good cause.[2] He told Farmer that if he performed his job he would keep his job and that if he did not perform his job he would be fired. He explained that "[t]hat's the way American Bank Stationery operates."

McDonald next reviewed an employee handbook with Farmer. Part of this handbook explained the reasons for which an employee could be fired. All of the reasons given for termination indicated that an employee could be fired only for cause. McDonald believed that the manual applied to Farmer and he communicated his belief to Farmer. Finally, McDonald explained to Farmer that ABS was only interested in him if he was able to make a long term commitment.

Farmer accepted ABS's offer and worked as plant manager for ABS from October of 1979, until January of 1982. While working as plant manager he received several salary increases and was well liked by the employees who worked under him. He refused an offer by ABS to transfer him to California or Texas. He also refused to take a better paying job with another company in Texas.

In January of 1982, ABS promoted Farmer to account executive. The major part of his work consisted of selling and servicing printing contracts with banks and credit unions. ABS required Farmer to make reports to John Kreiter, Farmer's new supervisor.

Kreiter and Farmer did not get along. Farmer claims that Kreiter continually called him on weekends, made uncomplimentary remarks to him, and told him to change his successful sales methods. Kreiter claims Farmer did not get reports in on time. Farmer requested and was given a transfer to another supervisor.

Due to changes in ABS, Farmer was reassigned to various supervisors. One of these supervisors was John Beaulieu who testified that Farmer ranked in the top ten percent of all sales managers he had worked with in 30 years. Farmer was the

---

[2]It is noteworthy that many senior management officials at ABS testified that they believed that employees at ABS could only be terminated for good cause.

number one ranked salesperson for the first quarter of 1984. His sales exceed 1.3 million dollars in 1984, a figure that has never been equaled by anyone else in ABS.

In July of 1984, Farmer began reporting to Kreiter once again. Kreiter and Farmer met on December 10, 1984. Kreiter told Farmer that he wanted a report from him. Farmer assumed that he was expected to begin writing this report on his return from his vacation which began on December 14, 1984, and ended January 2, 1985.

On December 31, 1984, while Farmer was on vacation, Kreiter sent him a critical letter claiming that he had made various mistakes. He complained in particular that Farmer had never sent him the report he requested. Farmer sent Kreiter a letter, apologizing for not sending the report and explaining that he had thought that he was to start on it after his vacation.

On January 10, 1985, Kreiter told Farmer that if he did not voluntarily leave ABS he would be fired. Farmer resigned the next day. He signed an agreement promising not to compete with ABS for three months if ABS paid him a certain sum of money and gave him title to his company car.

Farmer filed a complaint in June of 1987, charging ABS with, among other things, wrongful termination and the tort of breach of the covenant of good faith and fair dealing. The jury returned a unanimous verdict for Farmer for $393,048. The court found that $13,300 in tort damages, which the jury awarded Farmer for breach of the implied covenant of good faith and fair dealing, should not have been awarded, and that Farmer should only get contract damages. A judgment was entered for Farmer in April of 1989, in the amount of $410,478.88, including prejudgment interest.

ABS appeals the judgment.

## LEGAL DISCUSSION

### I. *Whether Farmer was an at-will employee.*

ABS contends that Farmer was an at-will employee. We disagree.

We note that all employees in Nevada are presumed to be at-will employees. An employee may rebut this presumption by proving by a preponderance of the evidence that there was an express or implied contract between his employer and himself that his employer would fire him only for cause. Bally's Employees' Credit Union v. Wallen, 105 Nev. 553, 779 P.2d 956, 957 (1989).

There is substantial evidence which rebuts the presumption that Farmer was an at-will employee and demonstrates that the jury was justified in finding he had an express oral contract with ABS that permitted his firing only for good cause. First, when McDonald (the hiring authority for ABS) offered Farmer a job at ABS he told him that if he did his job adequately he would keep his job but if he did not perform well he would be fired. He added "[t]hat's the way American Bank Stationery operates." This language is part of an offer which includes an explicit promise by ABS to keep Farmer as an employee if he performed adequately. Alternatively, the language also indicates that Farmer's continued employment was subject to a condition subsequent, namely, that if Farmer failed to perform adequately, ABS could fire him.

We emphasize that McDonald's promise is not a general expression of anticipated long term employment pursuant to Vancheri v. GNLV Corp., 105 Nev. 417, 777 P.2d 366 (1989). Rather, it was part of a specific offer that would lead a reasonable person in Farmer's position to believe that if he accepted the job he could only be fired for good cause.[3] Thus, when Farmer accepted ABS's offer of employment a contract was formed in which ABS promised that it would fire Farmer only for good cause.

Additionally, when offering Farmer a job at ABS, McDonald reviewed an employee handbook with Farmer. This handbook set forth reasons for which an employee could be terminated by ABS. The handbook stated that an employee could be discharged only for cause. McDonald believed that the policies in the handbook applied to Farmer. He discussed the handbook with Farmer extensively, asked him to read it in front of him, and strongly implied that the handbook applied to Farmer. Since it was made contemporaneously with the express oral promise, McDonald's reference to the handbook further strengthens the argument that ABS made an express oral agreement with Farmer that it would only fire him for cause. The handbook became a part of the oral contract between Farmer and ABS when McDonald indicated that it applied to Farmer.[4]

---

[3] It is Farmer's *objective* belief that he had an express contract that ABS could only fire him for cause which distinguishes this case from Bally's Employees' Credit Union, *supra,* where this court held that the *subjective* expectation of continued employment was not legally sufficient to rebut the presumption of at-will employment.

[4] In Foley v. Interactive Data Corp., 765 P.2d 373 (Cal. 1988), the court stated in dicta that an employee may state a cause of action for breach of an express oral contract if he proves that the employer and he agreed that the terms of an employee handbook applied to him. *Foley,* 765 P.2d at 383.

We emphasize that this opinion does not stand for the proposition that an employee handbook explaining a company's policies regarding termination automatically transforms an at-will employee into an employee who may only be fired for cause. Such a holding could discourage companies from publishing such handbooks. This case is distinguishable from Smith v. Cladianos, 104 Nev. 68, 752 P.2d 234 (1988), in which this court held that a provision in an employee handbook did not modify an employer's ability to discharge an at-will employee. In the instant case, ABS's handbook is *written* evidence of an express *oral* contract between ABS and Farmer that ABS would only fire Farmer for cause.

We further stress that we have decided this case on contractual principles only and have not modified the presumption that all employees are at-will employees. We simply hold that employers and employees are free to contractually change an employee's at-will status by either a written or oral agreement. We leave it to the jury to find whether such a contract has been entered into.

## II. *Whether Farmer was terminated for just cause.*

ABS contends that it fired Farmer for good cause. It asserts that Farmer performed poorly, failed to hand in reports on time, and was insubordinate. Farmer insists that he was very popular with those who worked under him, was instrumental in obtaining the Nevada portion of a 16 million dollar sale to First Interstate Bank, was supported by almost all of his supervisors, was the number one ranked salesperson for the first quarter of 1984, and had sales of more than 1.3 million dollars in 1984, a figure that has never been equaled at ABS. Farmer asserts that Kreiter was jealous of him, provided only negative information about him to his superiors, and never gave him a chance to respond to criticism.

The court must assume that the jury believed all of the evidence which was helpful to Farmer and also that the jury inferred favorable conclusions from this evidence. K Mart Corp. v. Ponsock, 103 Nev. 39, 43, 732 P.2d 1364, 1366 (1987). There is substantial evidence that McDonald promised Farmer that he would not be terminated if he did his job properly. There is substantial evidence that the employee's manual regarding dismissal for cause applied to Farmer. Thus, we hold that the jury was justified in finding that an express oral contract existed between Farmer and ABS, that Farmer could be terminated only for cause, and that ABS did not have cause to fire Farmer.

### III. Whether there was a settlement which precludes Farmer from getting damages for wrongful discharge.

ABS argues that Farmer made a settlement agreement with it which served as a waiver of his right to sue for wrongful termination. ABS states that before signing the settlement agreement Farmer said: "Well, I asked Mr. Kreiter what the company would—what kind of offer they were going to make me, what kind of settlement, what kind of compensation they were going to give me for just dropping me when I was doing a good job." A short time later the following written agreement was prepared:

> John, your resignation is accepted as of 1-11-85. *In consideration of your agreement not to call financial institutions for three months American will:*
> 1. Pay 9 weeks salary.
> 2. Pay Guarantee prorated on 9 weeks.
> 3. Be covered for hospital coverage (9 weeks) covered for all benefits.
> 4. Pay three weeks vacation pay.
> 5. At the end of the third month send to you title (free and clear) for your company car 1981 Ford Stationwagon.
> 6. Any bonuses due (last six months 84).

(Emphasis added.)

The above agreement was handwritten and signed by Kreiter, but not Farmer. However, both parties performed the terms of the agreement.

The signed agreement was not a waiver and the district court so held. Farmer simply promised not to call on financial institutions in return for which ABS promised to pay him a certain sum of money and give him the company car. The written settlement is clear. Had Farmer agreed not to sue the agreement would have so stated.

## CONCLUSION

We hold that there is substantial evidence that ABS and Farmer entered into an express oral contract in which ABS promised to terminate Farmer only for good cause, and that ABS did not have cause to fire Farmer. Finally, we conclude that ABS and Farmer did not enter into a settlement in which Farmer waived his right to sue ABS for wrongful termination. The judgment of the trial court is therefore affirmed.

YOUNG, C. J., SPRINGER and MOWBRAY, JJ., concur.

STEFFEN, J., concurring:

I concur only in the result reached by the majority.

Standing alone, I do not view the evidence of discussions antedating and postdating Farmer's employment as a sufficient basis for overcoming the presumption of at-will employment. It would appear, however, that the employee handbook issued by ABS strongly corroborates Farmer's contention that he was informed that he would be subject to discharge only for cause. If ABS intends to have its employees working on a terminable-at-will basis, it should pay attention to representations expressed in its employee handbook.

Although I do not favor the judicial conversion of employee handbooks to instruments of contract in general, I do recognize that employers may expressly undertake obligations to their employees that negate employment relationships that would otherwise be terminable at will. In the instant case, testimony favorable to Farmer's position was sufficiently corroborated by the employee handbook to permit jury consideration of the nature of the employment relationship. Although the evidence was conflicting, we do not interfere with findings of the trier of fact where, as here, there is substantial supporting evidence.

I separately concur in the result of the opinion written by my respected brother Rose only because I am fearful that some of the language of the opinion, including conclusions reached and authorities cited, may unduly encourage the filing of future wrongful termination actions of dubious merit.