899 P.2d 551 (1995)
John R. MARTIN and George Ann Martin, Appellants,
v.
SEARS, ROEBUCK AND CO., Respondent.
No. 22578.
Supreme Court of Nevada.
July 27, 1995.
*552 J.D. Evans, Las Vegas, for Appellants.
Gifford, Vernon, Beasey & Barker, Las Vegas, for respondent.

OPINION
STEFFEN, Chief Justice.
Appellant John Martin filed suit against his employer, respondent Sears, Roebuck and Co. ("Sears"), for wrongful termination in connection with Martin's manipulation of a store account in order to win a sales contest with other Sears' stores. For reasons specified hereafter, we conclude that the district court properly disposed of Martin's claim via summary judgment.

FACTS
Martin was employed by Sears from July 15, 1959, until April 17, 1984, when he was discharged. In January of 1984, Martin and his store manager agreed to a ploy involving the transfer of funds from a restitution account to maintenance agreements on televisions and video cassette recorders. The transfer of funds inflated the number of maintenance agreements sold in the store where Martin was employed, thus giving Martin's store an undeserved advantage in a sales contest against other Sears' stores.[1]
*553 Martin, who was operating superintendent at the Las Vegas Meadows Mall Sears' store, ordered the security manager to remove $1,073.16 from a restitution account. Martin then directed the appliance manager to place the sum taken from the restitution account into maintenance agreements. The security manager subsequently reported Martin's diversion of funds to a Sears' group manager in Los Angeles.
On April 4, 1984, in the course of Sears' investigation of Martin, Sears' group manager J.E. Besse recommended to Stephen Thorpe, Sears' territorial personnel director, that Martin be released because he had a record of manipulating company funds and had created an unworkable relationship between himself and the security manager. However, this recommendation was rejected in deference to the length of Martin's employment with Sears. Thorpe determined that because Martin improperly transferred funds and falsified company records, a demotion was more appropriate. On April 16, 1984, Besse informed Martin that he could resign or accept a demotion. The following day, Martin chose to resign.
Martin filed a lawsuit for wrongful discharge and Sears responded with a successful motion for summary judgment.

I. Constructive Discharge

Martin argues that he was constructively discharged because Sears requested that he accept a demotion to a sales position (with a forty percent cut in pay) or resign. We disagree.
A constructive discharge has been held to exist when an employer creates working conditions so intolerable and discriminatory that a reasonable person in the employee's position would feel compelled to resign. Satterwhite v. Smith, 744 F.2d 1380, 1381 (9th Cir.1984). More particularly, the court in Brady v. Elixir Industries, 196 Cal. App.3d 1299 (Cal. Ct. App. 1987), held that a tortious constructive discharge is shown to exist upon proof that: (1) the employee's resignation was induced by actions and conditions that are violative of public policy; (2) a reasonable person in the employee's position at the time of resignation would have also resigned because of the aggravated and intolerable employment actions and conditions; (3) the employer had actual or constructive knowledge of the intolerable actions and conditions and their impact on the employee; and (4) the situation could have been remedied. Id. at 1306.
After an investigation of Martin's conduct, Sears determined that he should be relieved as operating superintendent and demoted to a sales position. Martin was informed that if he chose resignation over demotion, he would still receive his retirement rights and severance pay. Only after Martin discussed his options with his spouse did he inform Besse of his decision to resign. These facts do not reflect a violation of public policy and are insufficient to constitute working conditions so intolerable that a reasonable person in the employee's position would resign. Sears undertook reasonable measures, short of termination, to discipline Martin for conduct both unauthorized and undeserving of a position of trust and responsibility. A tortious constructive discharge did not occur.

II. At-will Employment

Martin next argues that he enjoyed contractual employment which could only be terminated for cause. Specifically, Martin insists that because he agreed "to conform to the rules and regulations of Sears," he was protected from at-will termination. He further contends that because the Sears employee handbook states that "violation of these rules may result in termination of your employment," Sears must provide a procedure to determine if a rule has been violated prior to termination.
In order to adequately address Martin's claims, it is essential to again consider the doctrine of at-will employment as determined by this court in previous decisions.
At the heart of the doctrine is the general rule that at-will employment can be terminated without liability by either the employer or the employee at any time and for any reason or no reason. Phillips v. Goodyear Tire & Rubber Co., 651 F.2d 1051 (5th *554 Cir.1981). Limited exceptions to the general rule have been recognized by this and other courts as imperatives emanating from strong public policy. Hansen v. Harrah's, 100 Nev 60, 675 P.2d 394 (1984) (at-will doctrine subject to strong public policy exceptions); K Mart v. Ponsock, 103 Nev. 39, 47, 732 P.2d 1364, 1369 (1987) (employer has absolute right to terminate at-will employee at-will or at-whim unless offends public policy). Of course, employers and employees remain free to contractually modify an employee's at-will status, orally or in writing. American Bank Stationery v. Farmer, 106 Nev. 698, 703, 799 P.2d 1100, 1102 (1990). Initially, however, all employees in Nevada are presumptively at-will employees. Id. at 701, 799 P.2d at 1101-2. This presumption may be rebutted by proving, by a preponderance of the evidence, that there was an express or implied contract between the employer and the employee which indicates that the employer would only terminate the employee for cause. Id.
Martin seeks to justify his right to relief by invoking three distinct theories of recovery which assertedly apply, individually and collectively, to his case: discharge in breach of an implied-in-fact contract, discharge in violation of the implied covenant of good faith and fair dealing, and discharge in violation of public policy.

A. Breach of an implied-in-fact contract
This court first recognized an implied-in-fact contract exception to the at-will doctrine in Southwest Gas Corp. v. Ahmad, 99 Nev. 594, 668 P.2d 261 (1983). In Ahmad, an employee was terminated for cause. Under the facts of Ahmad, we concluded that inferentially, the employees' handbook formed part of the employment contract. Prior to her discharge, Ahmad was not afforded formal, pre-termination procedures as outlined in the employee handbook. Therefore, this court held that Southwest violated the procedures outlined in the employees' handbook, which, by inference, formed the basis for a contractual agreement in derogation of an at-will status. In 1990, we were again faced with the issue of the legal effect of the provisions of an employees' handbook. American Bank Stationery v. Farmer, 106 Nev. 698, 799 P.2d 1100 (1990). In Farmer, we held that since the handbook provided for discharge only for cause, the employment status was modified from at-will to employment terminable solely for cause. We noted, however, that employment at-will is not automatically transformed to employment terminable for cause merely because of the existence of an employees' handbook explaining a company's policies regarding termination. To rule otherwise "could discourage companies from publishing such handbooks." Id. at 703, 799 P.2d at 1102. We reaffirm the latter observation.
Martin contends that he enjoyed a contract of employment terminable only for cause. The claim is without merit. Specifically, Martin has failed to overcome the legal presumption of at-will employment. Id. at 701, 799 P.2d at 1101. Since a claim arising from breach of contract has no application to at-will employment, and Martin has not demonstrated that he was other than an at-will employee, a breach of contract cause of action will not lie. Bally's Employees' Credit Union v. Wallen, 105 Nev. 553, 555, 779 P.2d 956, 957 (1989).
During Martin's hiring by Sears, he executed a written application for employment which specifically stated that his employment could be "terminated with or without cause, and with or without notice, at any time, at the option of either the Company or [Martin]." The quoted provision in the employment application is traditional at-will language designed to clearly inform a prospective employee of his or her employment status. Moreover, the Sears' Personnel Manual explains that:
[T]he representations referring to causes for termination are not intended as any limitation on Sears' termination authority, and should not give rise to any expectations of continued indefinite employment where such causes are not present. This Manual, in common with other Sears employee manuals, handbooks, etc., is not intended to, and indeed does not, bestow any additional rights to employment or employment benefits to Sears employees.
*555 Sears took deliberate measures to inform its employees of the at-will nature of the employment relationship. Accordingly, we hold that the district court's finding that Martin was an at-will employee is supported by substantial evidence and is consistent with Nevada law.

B. Bad faith discharge in violation of the implied covenant of good faith and fair dealing
Martin next claims that because of "numerous oral assurances," there existed an express or implied contract of employment, including an implied covenant of good faith and fair dealing. We first recognized the tort of bad faith discharge in K Mart Corp. v. Ponsock. In Ponsock, K Mart had hired Ponsock "until retirement" and for "as long as economically possible." Nine and one-half years later, K Mart terminated Ponsock, an admittedly excellent, long-term employee, only six months before his retirement benefits would have fully vested. It was determined that K Mart's true motive in terminating Ponsock was to divest him of his retirement rights. Accordingly, this court held that a claim for bad faith discharge would lie in the fact-specific instance where a tenured employee who enjoyed a right to continued employment was discharged by a large, nationwide employer in bad faith for the improper motive of defeating contractual retirement benefits. Id. at 48, 732 P.2d at 1369-70. Bad faith discharge finds its genesis in Section 205 of the Restatement (Second) of Contracts, which states that: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." For this cause of action to apply, specific elements must exist. First, there must be an enforceable contract. Second, there must be a special relationship between the tortfeasor and the tort victim, such as the relationship that exists between an insured and an insurer, that is, a relationship of trust and special reliance. Id. at 49, 732 P.2d at 1370. Third, the employer's conduct must go "well beyond the bounds of ordinary liability for breach of contract." Id. at 48, 732 P.2d at 1370. However, the mere breach of an employment contract by a large and powerful employer, or any employer, does not in and of itself give rise to tort damages. Id. The reason tort damages are appropriate for bad faith discharge is that ordinary contract damages do not adequately compensate, nor do they make the victim whole. Id. at 49, 732 P.2d at 1371.
As indicated above, breach of contract and bad faith discharge are not applicable to at-will employment. Wallen, 105 Nev. 553, 555, 779 P.2d 956, 957. Martin has offered no evidence of an oral contract other than general expressions of his own subjective expectations of long term employment. Such expectations are insufficient to substantiate an express or implied agreement for continuing employment. This court has held that general expressions of long term employment do not transform at-will employment to employment contracts terminable only for cause. Vancheri v. GNLV Corp., 105 Nev 417, 422, 777 P.2d 366, 368 (1989). Because Martin was an at-will employee, his claim for bad faith discharge must fail.

C. Discharge in violation of public policy
Martin's final argument is that he was constructively discharged in violation of public policy. Specifically, Martin alleges that he was discriminated against because of his age (forty-six) and to reduce Sears' costs.
A tortious discharge in violation of public policy may arise in an at-will employment setting. Ponsock, 103 Nev. at 46, 732 P.2d at 1369. We first recognized this cause of action in Hansen v. Harrah's, 100 Nev 60, 675 P.2d 394 (1984). In Hansen, employees were terminated in retaliation for filing workers' compensation claims justified by work-related injuries. We held that retaliatory discharge under such circumstances was repugnant to and violative of Nevada's strong public policy in favor of protecting and providing for injured workers. Id. at 63, 675 P.2d at 396. Accordingly, a narrow exception to the at-will doctrine was created which recognized that "retaliatory discharge by an employer stemming from the filing of a workmen's compensation claim by an injured employee is actionable in tort." Id. at 64, 675 P.2d at 397.
*556 Martin seeks to place his own situation within a public policy exception relating to age discrimination through means of an internal letter or memorandum written by Besse discussing the basis for the termination. Unfortunately for Martin, the letter is unsupportive of his claim as a matter of law because the letter does not refer, either expressly or by reasonable inference, to Martin's age.[2] Moreover, age discrimination does not fit into the narrow public policy exception to the "at-will" employment doctrine. Sands Regent v. Valgardson, 105 Nev. 436, 439, 777 P.2d 898, 899 (1989).

CONCLUSION
Based upon our review of the record and for reasons discussed above, we conclude that the district court properly entered summary judgment against Martin. Accordingly, the summary judgment is affirmed.[3]
YOUNG, J., concurs.
ROSE, Justice, concurring:
The majority's decision does not change employment law in Nevada, as claimed by the dissenting opinion, it merely upholds existing law.
Martin's job application, the Sears' Personnel Manual, and the Sears' orientation booklet, Getting Acquainted with Sears, all spell out, in unambiguous terms, that Sears' employees are employed at-will. I do not adopt any kind of "once at-will, always at-will position" as the dissent implies. However, Martin has simply not provided any evidence of oral representations or employment practices that could modify his original at-will status. In D'Angelo v. Gardner, 107 Nev. 704, 819 P.2d 206 (1992), this court declared: "Just as there are cases in which handbooks and employment practices can be found to support an express or implied obligation of continued employment, so are there cases in which such an obligation is absent as a matter of law." Id. at 710, 819 P.2d at 210. Clearly, the instant case falls among the latter.
The dissent assumes that recognizing that Sears provided reasons for disciplining Martin is equivalent to recognizing that the discipline was "for cause." This is incorrect. The fact that Sears' policies required management to provide an employee with the reason for his/her termination and that long-term employees could not be fired without the approval of upper management does not change the status of Sears' employees. After unequivocally stating that all employees were at-will, the personnel manual then provided that a territorial vice president must approve any termination where the employee has ten years of service and required that a reason be given for every termination. The manual then listed how various terminations of employment should be handled. Under the termination for dishonesty, it stated that termination for this reason should only occur if the employee has admitted the act in writing or there is other conclusive evidence of the act. The next category, violation of company rules, provides that if this violation involves the mishandling of cash after proper training and without reasonable excuse, the employee is to be released immediately. However, at the beginning of this section, the Sears' personnel manual stated that references to causes for termination do not change the employee's at-will status: "The representations referring to causes for termination are not intended as any limitation on Sears termination authority, and should not give rise to any expectations of continued indefinite employment where such causes are not present."
In Vancheri, we held that establishing disciplinary procedures does not create a for cause employment situation. I view the benefits *557 given Sears' employees as akin to those given the employees of the Golden Nugget in Vancheri. Martin admits to the underlying facts but claims they do not warrant his dismissal. I believe the admission of these facts constitutes conclusive evidence, and it certainly would justify termination for mishandling cash. But, since Martin is and always has been an employee at-will, he can be terminated for any cause that does not violate Nevada's public policy.
The dissent states that: "Sears made what could very well appear to a jury as a pretextual and insubstantial charge of minor improprieties against Martin and dredged up some stale, minor rule violations out of Martin's long employment past and used these violations as an excuse to terminate him for cause." (Footnote omitted.) The "minor improprieties" addressed by the dissent are two separate incidents where Martin diverted Sears' funds and falsified company records. These acts could be viewed as constituting a serious crime, see NRS 205.300 and NRS 205.220, but certainly the admitted acts of Martin establish the mishandling of cash and failure to follow company policies. But, since Martin was always an at-will employee, Sears was within its rights to terminate him for no reason at all, and firing someone who fails to follow company policy or mishandles cash does not violate Nevada's public policy. For these reasons, I concur with the majority's opinion.
SPRINGER, Justice, dissenting:
About a month ago, this court issued its opinion in the case of Yeager v. Harrah's, 111 Nev. ___, 897 P.2d 1093 (1995), in which it refused to let a Harrah's employee have a jury trial because he did not furnish any corroborative evidence to establish that his contract with Harrah's would not permit Harrah's to terminate him without cause. I dissented in Yeager because the employee in that case offered ample evidence to support his employment contract and because I did not think that an employee should be thrown out of court simply because he had supplied no corroborative evidence to back up his own testimony. The injustice suffered by Mr. Yeager is mild compared to the injustice suffered by Mr. Martin in the present case. Mr. Martin was terminated for cause, yet this court characterizes him as an at-will employee as a matter of law and denies to Martin, too, his right to a jury trial on the factual issues relating to the nature of his employment contract.
Making employees furnish corroboration in employment contract cases and calling an employee who was terminated for cause an at-will employee as a matter of law represents to me a radical shift in the employer-employee law of this state. This shift (as I shall explain in this dissent) is brought about by one justice who has decided to switch his vote from his previous position and to join the position espoused by the dissent in D'Angelo v. Gardner and Western States Minerals Corp. v. Jones, 107 Nev. 704, 819 P.2d 206 (1991) (cited as D'Angelo) and Southwest Gas Corp. v. Ahmad, 99 Nev. 594, 668 P.2d 261 (1983).
The question of whether Sears could fire Martin only for cause or had the right to fire him "at-will" is a complex question involving issues of fact that should go to a jury. By holding that Martin was at the time of his dismissal an at-will employee as a matter of law, this court is ignoring the factual issues inherent in this dispute and is denying to Martin his right to a jury trial. Martin is entitled to have the opportunity to prove to a jury that although Sears may have hired him as an at-will employee twenty-four years ago, over the years his employment with Sears ripened into a contract of continued employment so that Sears did not have the right to terminate his employment without cause.
Sears' position is that Martin was hired twenty-four years ago as an at-will employee and that Martin's employment status has remained the same. Sears claims that Martin, as a matter of law, could not and did not acquire any employment rights during his time with Sears and that the company could fire him any time it wanted to and without having any reason for doing so. The major flaw in Sears' position and with its claim to a right to terminate Martin without cause is that, in fact, Sears terminated Martin for cause after giving notice to Martin of the company's intention to terminate him for *558 cause (the cause being, "documented misconduct"). If Sears believed it had the right to fire Martin only for cause and went about firing Martin for cause, then quite plausibly a jury might conclude from this fact alone that Sears had the right to fire Martin only if it had cause for doing so. If Sears believed that it could only dismiss Martin for cause, then a jury could believe the same.
Given the relationship that developed between Sears and Martin over the twenty-four-year employment period and given the reality that Sears did, in fact, terminate Martin for cause, about the only way that Sears could prevail, if the case went to trial, would be to show that once Sears hires an employee at-will, that employee remains at-will forever and may never be eligible for any other employment status. Martin would counter Sears' claims by offering proof to the effect that although he was originally hired at-will, he later became entitled to certain privileges not accorded to newly-hired at-will employees, privileges which included the right to be terminated by no one other than a company vice-president and the right to remain on the job unless good cause was shown to terminate him.
As I see it, neither Sears' position (once at-will, always at-will) nor Martin's position (an at-will employment has ripened into a dismissal-only-for-cause employment) can be established as a matter of law. There are too many fact variables that must be resolved.[1]
In his concurring opinion JUSTICE ROSE points to the fact that the documents presented by Sears at the time the company employed Martin "all spell out, in unambiguous terms, that Sears employees are employed at-will." He then cites the following language in the Sears personnel manual.
The representations referring to causes for termination are not intended as any limitation on Sears termination authority, and should not give rise to any expectations of continued employment where such causes are not present.
I would agree with JUSTICE ROSE that Martin was at the time of his hiring "employed at-will," but I would point out that Martin is not contending that the statements in the employment documents relating to termination created any "limitation on Sears termination authority," at the time Sears hired him. Everyone understands that on the day Martin was hired, he was an at-will employee and could be fired without cause. Martin is not saying that merely because the manual contained a list of "causes" for termination, this entry in the manual, of itself, endows him with contract rather than at-will status. Martin could not plausibly make such a contention because the manual does specify that at the time he was employed by Sears he was hired as an at-will employee. What Martin is contending is that after he was there for a while, Sears recognized and Martin accepted a change in Martin's employment status and that Martin had attained certain contractual employment rights. There came a time during Martin's employment with Sears when he *559 could be terminated only by a vice-president of the company and when termination "required that a reason be given" for his termination. At the time he was terminated Martin had accumulated a bundle of rights that he did not have when he signed-on with Sears as an at-will employee. Recognizing these rights, Sears decided, after twenty-four years of service, to fire Martin for cause  for being dishonest. Having made that decision, Sears' own rules prevented termination of Martin except at the hands of a company vice-president and then only when (1) Sears gave Martin the reason for the termination, and (2) in cases where the cause was dishonesty, Sears could prove either an admission of guilt or "conclusive evidence" of the dishonesty.
To hold that because Martin was hired as an at-will employee he must remain in this status forever is to ignore American Bank Stationery v. Farmer, 106 Nev. 698, 701, 799 P.2d 1100, 1101 (1990), which provides for situations like the present one and for the later adoption by the employer and the employee of an "implied contract ... that [the] employer would fire him only for cause." Under D'Angelo, an employee is entitled to show that the dealings and practices of the employer and the employee during the term of employment may support a jury finding that an employer had assumed contractual obligations not to discharge an employee except for cause. Sears acknowledged and carried out its obligations to notify Martin of the cause of his termination and undertook to prove dishonesty by "conclusive evidence."
I have a hard time understanding how JUSTICE ROSE can now say that, under D'Angelo, Martin does not even have the right to go to a jury on the factual issues relating to Martin's employment status. Justice Rose ruled with the majority in D'Angelo and held that an employee is entitled to go to a jury on these kinds of issues. Although I agree with Justice Rose that "firing someone who fails to follow company policy or mishandles cash does not violate Nevada's public policy" (Concurring Opinion at 4), I strongly disagree with JUSTICE ROSE'S opinion that Martin should be denied his right to a trial and denied his right to prove to Sears and to the world that he was not, as Sears has charged, guilty of dishonesty on the job.
I, of course, realize that our cases hold that "general expressions of job longevity" and the mere presence of "established disciplinary procedure[s]" are not "sufficient to establish a prima facie case rebutting the at-will employment presumption." Vancheri v. GNLV Corp., 105 Nev. 417, 422, 777 P.2d 366, 370 (1989). Martin, however, is not relying on general expressions of longevity or on the mere fact that disciplinary procedures were prescribed. Martin asks only for the right under D'Angelo and American Bank Stationery to prove to a jury that a contract of continued employment existed between Sears and him. Proof of such a contract is evidenced by the changes in Martin's status that evolved during the term of his employment and by conduct on the part of Sears which is inconsistent with Martin's being an at-will employee. Sears did not consider Martin as an at-will employee (Sears did not dismiss him at-will). Sears appears to me to have agreed expressly or impliedly to dismiss Martin only for cause.

Overruling D'Angelo
Two years ago we decided to consolidate two wrongful discharge cases, D'Angelo v. Gardner and Western States Minerals Corp. v. Jones, 107 Nev. 704, 819 P.2d 206 (1991). In these opinions, the members of this court engaged for some fifty-eight pages in a debate on the meaning of "at-will" as the term relates to relatively long-term employees who lay claim, by reason of their tenure and their past dealings with their employers, to something more than an at-will job in which their employers are permitted to cast them off without any particular reasons for doing so, after long years of faithful service. A majority of this court held that Mr. D'Angelo, a twelve-year employee, had made out a triable jury case that he was not, at the time that his employer dismissed him, an at-will employee and that his employer had, during the employment period, assumed an "obligation of continued employment" which protected D'Angelo against whimsical at-will dismissal. Id. at 711, 819 P.2d at 211. D'Angelo stands for the proposition that even in the *560 absence of an express contract of continued employment, an at-will employment may grow into an employment relationship in which an employer has a "contractual obligation not to discharge the employee without first abiding by the conditions relating to dismissal which are ... inferable from the dealings and practices of the parties." Id. at 709, 819 P.2d at 209 (emphasis added).
Despite the kind of urgent protestations that were set forth by two of the justices in the D'Angelo dissent, the law in this state has, for the past ten years[2] and until today, remained constant: Even though employment relationships are presumed to be at-will, a contractual relationship as to tenure may be inferred from the dealings and practices of the parties, and an employee is entitled "to present evidence that the parties decided to forego `at-will' status and enter into a contract relative to employment termination." Id. at 708 n. 3, 819 P.2d at 209 n. 3.
I would be much more tolerant of the Majority's abrupt change of position in employment law if it had acted in accordance with accepted judicial process and had expressly overruled the employee-rights jurisprudence of the past. As things now stand, no one really knows what our employment law stands for or what it means. I am saddened that such a radical change in our law must come about only two years after D'Angelo merely because one of our justices, Justice Rose, has joined the position of the two dissenting justices in D'Angelo. We are back again on the at-will see-saw.

Understanding Martin's Dismissal
To get a real grasp of what this case is all about, it is helpful to examine why Martin was targeted for dismissal. Martin's dismissal was part of an organized plan by Sears to purge middle-management employees. In 1982, in order to make cut-backs in personnel costs, Sears adopted a plan for reducing its complement of permanent employees. By eliminating long-term employees and hiring new or part-time employees Sears believed that it would be able, overall, to pay lower salaries and to pay out less in salaries, profit sharing and other employee benefits, including retirement benefits. This employee-reduction plan had a name: "Ideal Basic Organization."
Martin had been with Sears for twenty-four years at the time the company targeted him for annihilation under its "dreaded" (to quote Martin's testimony) Ideal Basic Organization (IBO) plan. In order to further the goals of the IBO, Sears made what could very well appear to a jury as a pretextual and insubstantial charge of minor improprieties[3] against Martin and dredged up some stale, minor rule violations out of Martin's long employment past and used these violations as an excuse to terminate him for cause. The manner in which Sears effectuated its IBO plan in Martin's case was that the company chose not to fire him outright and honestly but, rather, to force him to quit by reducing him in rank and salary so that after twenty-four years of service to Sears, the company ordered him back to about the same position that he was in when he first joined the Sears organization. Martin may have *561 both a contract claim and a tort claim against Sears because of the way Sears treated him; and the trial court should not have entered judgment against him without giving him a trial.
Evidence in this case would support a conclusion that Martin's employment relationship with Sears changed over the years. As a senior, managerial employee, Martin could not be terminated without the approval of a vice-president. It was because of this status that a Sears vice-president interfered with the process of dismissing Martin for cause and ruled that even in light of the charges of "documented misconduct" levied against Martin, the vice-president would "not allow [Martin's accusers] to terminate him." It would appear that Martin had reached a point in his relationship with Sears at which no one had the understanding or belief that he could be tossed away like an old shoe. To me it is highly probable that Sears management itself believed it could terminate Martin only if the company were able to prove conclusively "documented misconduct."[4]
Employee misconduct is a serious charge; and, according to the Sears personnel manual, an employee may not be "released [for documented misconduct] unless the unit has a written statement signed by the employee admitting the act, or there is other conclusive evidence of the act."[5] (Emphasis added.) Since Martin made no written admissions of fault, it follows then that Sears, by the language of its own manual, had to prove its case against Martin by "conclusive evidence" before he could be "released." It is hard to say whether this "conclusive" burden of proof is comparable to the beyond a reasonable doubt standard or the standard of clear and convincing evidence, but in either event Sears imposes on itself a heavy burden when it decides to discharge an employee for cause on charges of employee "misconduct." In this regard I would point out first that if Sears really believed that Martin was an at-will employee, it is not likely that it would have undertaken to marshal "conclusive evidence" that Martin was guilty of "misconduct." Secondly, I would say (although it really has no bearing on the question of whether Martin was an at-will employee as a matter of law) that it is plain from the record that there is no "conclusive" evidence that Martin was guilty of the type of wrongdoing that would have justified Sears in dismissing for cause this twenty-four year, permanent employee. Sears agrees that there was insufficient cause to terminate Martin. Sears' counsel informs us that a Sears vice-president *562 acknowledged: "No, you can demote him but I'm not going to allow you to terminate him." I must assume from this statement that there were not sufficient grounds "to terminate" Martin. Whether, of course, demoting Martin to an entry-level employee was, in fact, the same as terminating him is a question that must be answered by a factfinder.[6]
In short, if the newly-aligned Majority of this court had not decided (without actually saying so) to overrule D'Angelo and to refuse to permit a dismiss-only-for-cause employment contract to be "infer[red] from the dealings and practices of the parties," this case would have to be sent back for a jury trial. D'Angelo, 107 Nev. at 709, 819 P.2d at 209. There are a number of dealings and practices of these parties from which a cause-only relationship could be inferred. The most telling of all are the "dealings and practices" engaged in by Sears when it decided to get rid of Martin.
Before I go on to consider Sears' tort liability, I want to conclude by stressing the fact that, in its dealings with Martin, Sears never pretended that after all those years with the company it still had the right to fire Martin without cause. Surely employers can put into their handbooks and hiring documents a declaration that employment is to be at-will, but at-will at the time of hiring is not necessarily at-will forever.[7]

Bad Faith Discharge
Martin cannot state a tort action for breach of the implied covenant of good faith and fair dealing in this case unless he can first establish a contract of continued employment. See K Mart Corp. v. Ponsock, 103 Nev. 39, 47-52, 732 P.2d 1364, 1369-73 (1987). Should Martin establish a contractual right that goes beyond mere employment at-will, he is then in a position to make out a prima facie bad-faith discharge case.
The present case is controlled by Ponsock. In Ponsock, an at-will employee who had later become a permanent contract employee was fired based upon his employer's "improper motive of defeating contractual retirement benefits." Id. at 48, 732 P.2d at 1370. In a manner similar to the present case, K Mart decided to get rid of Mr. Ponsock because he was a well-paid, long-term employee whom K Mart had decided for its own purposes to terminate just as his retirement plan was due to vest. As Sears appears to have done in the present case, K Mart formulated a plan to terminate Ponsock for a contrived cause, thus eliminating Ponsock's retirement entitlement and at the same time avoiding possible contractual claims that Ponsock might have against K Mart for wrongfully terminating his employment without cause. The cause that K Mart dreamt up to get rid of Ponsock was that Ponsock had violated company policy by sprucing up the battery cover on his company fork-lift with a little paint that Ponsock found in a refuse can. The K Mart scheme for termination of Ponsock on this subterfuge backfired, however, and the company ended up paying not only contractual *563 damages but also tort damages for breach of the implied covenant of good faith and fair dealing.
I do not see how it can be said, if Martin can establish contractual rights to continued employment at Sears, that he failed in this case to make out a prima facie case for a tort claim under the Ponsock doctrine. The Ponsock doctrine was based on evidence in that case that Mr. Ponsock was wrongfully terminated "in order to save having to pay him retirement benefits provided for in the employment contract." Ponsock, 103 Nev. at 42, 732 P.2d at 1365.
Drawing every reasonable inference in Martin's favor, I see the same pattern in this case that I saw in Ponsock. Sears was not being honest. Martin was dismissed in accordance with a concerted plan by Sears to relieve itself of the financial burden inherent in keeping long-term employees, but Sears did not frankly say to Martin: "You do not fit into our employment scheme under our new Ideal Basic Organization policy; so you must go." It is certainly arguable from the evidence in this case that Sears invented a phoney "cause" for getting rid of Martin that is very much like the battery-cover and paint story invented by K Mart when it wanted to get rid of Mr. Ponsock.[8] If Sears had merely decided to get rid of Martin, and had forthrightly fired the man, his only claim would have been for breach of contract. There is evidence here, however, that Sears engaged in the same kind of subterfuge and bad faith that was used in Ponsock; and this is a basis for concluding that Sears might have acted tortiously.
In the Ponsock case we compared certain kinds of employment contract cases to insurance bad faith cases and, relying on this comparison, required, in bad faith employment cases, that the plaintiff be able to establish a "special relationship" between employer and employee that grew out of long-term employment and the employee's reliance, as a "trusting party," on the employer's good faith in dealing with the employee. To my mind, if we were to accept all of Martin's claims in the light most favorable to him (as we must), this is a much stronger tort case than Ponsock, and one that cries out more loudly for justice. Martin had been with Sears for twenty-four years, while Mr. Ponsock had been employed less than ten years. Additionally, Martin's relationship with Sears was closer and involved more reliance on the employer's good faith than that of K Mart and Mr. Ponsock. The record shows that Martin intended to make working for Sears his life work. Martin loved Sears and planned to stay there for life. He was proud to be a member of the Sears team  that is, until the "dreaded" Ideal Basic Organization plan became focused on him.
Tort remedies were allowed in Ponsock because K Mart's conduct went "beyond the bounds of ordinary liability for breach of contract." 103 Nev. at 48, 732 P.2d at 1370. The same principle applies here, only more so. To save money and to try to avoid the possible eventuality of Martin's recovering contract damages against Sears for wrongful discharge, a jury could reasonably find that Sears committed two bad faith acts: First, that Sears introduced a contrived "cause" to justify the termination of Martin ("documented misconduct"). Second, that instead of actually firing him, Sears used another subterfuge, "demotion"  "We'll make it so miserable for you, you can't possibly stay on." Such actions by Sears would support a Ponsock bad-faith tort action.
Although we said in Ponsock that the case represented a "fact-specific instance of discharge by a large, nationwide employer of an employee in bad faith for the improper motive of defeating contractual retirement benefits," 103 Nev. at 48, 732 P.2d at 1370, there is no reason why the Ponsock doctrine should be limited to bad faith cases in which only a single benefit of longevity, deprivation of retirement benefits, is involved.[9] If, as one *564 version of the facts in this case portrays, Sears, strictly for its own economic motives, deceived Martin and oppressively deprived him of his employee rights, it is not hard to construct a bad faith tort action out of this kind of corporate conduct: Sears would then have tortiously and intentionally deprived Martin of his life's career, his income, the hard-earned benefits of employment longevity, and retirement benefits.
Martin has made out a prima facie case of breach of a contract of continued employment and of the tort of bad faith discharge. Summary judgment should never have been granted in this case. I would reverse and remand for trial on both the contract claim and the tort claim.
NOTES
[1] This was not Martin's first attempt to accomplish a desired objective by an unauthorized manipulation of store funds. In 1978, while working as an assistant manager at Sears' Lancaster, California store, Martin diverted funds from the sale of cardboard boxes to finance a Sears' company picnic that Martin was promoting. Upon discovery of Martin's diversion of funds, Sears gave Martin a corrective interview.
[2] Besse's letter stated:

This is pursuant to our phone conversation regarding John Martin, Operating Superintendent, Las Vegas-Meadows.
I think we should release him. He has a record of manipulating Company funds. He has probably created an unworkable relationship between himself and the Security Manager. Moreover, as our Company progresses with sophisticated systems, and if the Store Manager-Operating Superintendent team becomes the future staffing standard, John Martin will not be capable of fulfilling the responsibilities of the job. At some future time we will probably have to deal with him anyway.
[3] The Honorable Miriam Shearing, Justice, did not participate in the decision of this matter.
[1] As I have maintained in the text of this dissent, the most persuasive evidence in this case in favor of Martin's position is that Sears itself acted on the assumption that it could terminate Martin only if it had cause for doing so. I would note in addition that Sears' written employment policy "requires that reasons for each such termination be clearly explained to the employee. Reasons for release should be documented." Further, "[t]he Company has established certain procedures which are outlined in paragraph 2303 for handling these cases to make certain that every employee is treated fairly." Given other language in Sears' employment documents, Sears could probably argue successfully that newly-hired employees are at-will and that such language was a gratuitous and non-binding expression of intention which gives no enforceable rights to employees at the time they are hired. This argument must give way, however, in a case like this, when Sears actually undertakes the for-cause termination procedures, gives Martin notice of the "reasons for ... termination" and goes about trying to prove "by conclusive evidence" that Martin was guilty of "misconduct." If Sears had asserted its right to terminate Martin as an at-will employee and merely said, "You're fired," this would be a different case. Instead of doing this, Sears elected to prove cause by "conclusive evidence" by showing that Martin was guilty of "misconduct" in the form of dishonesty. It is hard for me to understand how Sears can straight-facedly maintain its employment-at-will position under these circumstances. I say in the text that both Sears and Martin have failed to establish their position as a matter of law, but to my mind, Martin has come very close to establishing his right to be terminated only for cause, as a matter of law.
[2] Southwest Gas Corp. v. Ahmad, 99 Nev. 594, 668 P.2d 261 (1983).
[3] According to the record, Martin's co-workers, Mike Flaherty and Mike Bergie, had told Martin about some money that had come into the Meadows Mall store's restitution account. Mr. Flaherty suggested that the money be used to purchase maintenance agreements on in-store display of TVs and VCRs. An increase in the number of maintenance agreements sold would look good for the store. Martin took the idea to Ernie Staley, store manager, who gave his approval, and arrangements were made for the transaction. Jeff White, security manager, disapproved of this procedure and contacted a Sears Los Angeles group manager about it. This was the nature of the "misconduct" that led ultimately to Sears charging Martin with "misconduct." That concurring JUSTICE ROSE would suggest that Martin was guilty of a "serious crime" under these circumstances, and suggest that he was subject to termination for criminal conduct is in my view a misreading of this case.

Martin's position is simply that Sears did not have the right to fire him without cause and that the company proceeded under this assumption. Sears backed down on its charges of "documented misconduct" and instead forced Martin's resignation by "demoting" him to an entry level job. Whether Martin was in fact a treacherous criminal or simply a man who was trying to look good in an intra-company sales competition is certainly a question of disputed fact that a factfinder should resolve.
[4] Martin was disciplined under the Sears handbook for "documented misconduct." The Concurring Opinion recognizes that Martin was disciplined for cause (something that would be entirely unnecessary in the case of an at-will employee) when it characterizes Martin as a felon and points out that there is "no public policy against demoting or terminating an employee who commits a felony ...," that is to say no public policy against dismissing such an employee for cause. This is exactly my point, there is no public policy against Sears' terminating an employee who commits a felony on the job. Sears had every right to terminate Martin under the terms of the employee handbook if the company could have proved cause for termination by "conclusive evidence of the acts." It is logical to conclude from the evidence in this case that Sears did not have the right to terminate Martin, absent conclusive proof of wrongdoing. Sears apparently fully understood this point, or it would not have gone ahead with its charges of misconduct against Martin. Unable to prove misconduct which warranted dismissal, Sears went ahead with its IBO plan and got rid of Martin anyway through the pretext of demoting him. Others may not see the facts in this light, but to rule that Martin had no contractual rights of any kind, as a matter of law, is clearly contrary to the facts and contrary to the wrongful discharge jurisprudence of this state prior to the realignment of judges referred to in the body of this Dissent.
[5] Modern corporate management, as a rule, wisely recognizes that fair treatment of workers is not only morally right but also is practically effective and translates into loyalty and productivity on the part of workers. Many corporate employers, like Sears, establish policies and systems of performance evaluation, progressive discipline, termination for cause, and internal grievance resolution. These enlightened policies and procedures are not consistent with an untrammelled employer's right to terminate any employee "for good cause, for no cause or even for cause morally wrong." Payne v. W. & Atl. R.R. Co., 81 Tenn. 507 (1884). Giving employees a policy statement or employees' bill of rights and then insisting that those rights can be withdrawn at any time and at the "will" of the employer is hypocritically unjust and out of harmony with present-day thinking in the field of labor relations, whether from the employer's or the employee's perspective.
[6] See, e.g., Young v. Southwestern Sav. & Loan Ass'n, 509 F.2d 140, 144 (5th Cir.1975), in which constructive discharge was defined in terms of an employer's "deliberately mak[ing] an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." Although there may be some room for thinking otherwise, certainly a factfinder would be justified in finding that getting rid of this permanent employee was what Sears intended, and that forcing Martin into such an obviously unacceptable, low-paying entry job can be seen as just part of Sears' oppressive way of carrying out its IBO plan to terminate the Martins in the company.
[7] We have expressly recognized that there are instances in which at-will hiring ripens into an employment contract. See K Mart Corp. v. Ponsock, 103 Nev. 39, 732 P.2d 1364 (1987). In Ponsock, the employee started out as an at-will employee and after years of service gained certain enforceable contractual rights to continued employment. As we noted in D'Angelo:

Employment contracts are ordinarily and presumably contracts which are terminable at-will; however, an employer may expressly or impliedly agree with an employee that employment is to be for an indefinite term and may be terminated only for cause or only in accordance with established policies or procedures. We have called this a contract of "continued employment[,]" a contract which an employee can enforce in accordance with its terms.
D'Angelo, 107 Nev. at 711-12, 819 P.2d at 211. The Majority recognizes that "employers and employees remain free to contractually modify an employee's at will status."
[8] It can be inferred from this record that one of the ruses which Sears allegedly instigated under the IBO plan was to transfer senior employees to inferior jobs with inferior pay and thus force them out of Sears employment.
[9] Sears' wrongful termination of Martin certainly resulted in a diminution of his retirement benefits. This would seem to put this case within the Ponsock rule, even it we were to construe it very narrowly.