**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| KATRICIA CLOES, an individual, | No. 12-15640 |
| Plaintiff–Appellant, | D.C. No. 2:09-cv-00851-PMP-GWF |
| v. | |
| CITY OF MESQUITE; CITY OF MESQUITE POLICE DEPARTMENT; KIRT HUGHES, | MEMORANDUM[*] |
| Defendants–Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, Senior District Judge, Presiding

Submitted January 14, 2014[**]
San Francisco, California

Before: TALLMAN and IKUTA, Circuit Judges, and O'CONNELL, District
Judge.[***]

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Beverly Reid O'Connell, District Judge for the U.S.
District Court for the Central District of California, sitting by designation.

Katricia Cloes (Cloes) appeals two of the district court's decisions: (1) granting dismissal of Cloes's claims against City of Mesquite Police Chief Douglas Law (Chief Law) and Lieutenant Shane Charles (Lt. Charles); and (2) granting summary judgment in favor of the City of Mesquite (City).

We lack jurisdiction to review the order and judgment dismissing Chief Law and Lt. Charles from the action because Cloes did not name Chief Law or Lt. Charles in her Notice of Appeal. *See Le v. Astrue*, 558 F.3d 1019, 1022 (9th Cir. 2009). We have jurisdiction to review the lower court's summary judgment order and judgment for the City pursuant to 28 U.S.C. § 1291.

We review *de novo* a district court's decision to grant summary judgment. *Dreiling v. Am. Online Inc.*, 578 F.3d 995, 1000-01 (9th Cir. 2009). For the following reasons, we affirm.

## I. *Monell* Claim

First, we hold that the district court properly granted the motion for summary judgment on Cloes's Monell claim against the City. The district court held that Cloes did not provide evidence to show that a City policy was the moving force behind a constitutional injury. We agree.

"Municipalities, their agencies, and their supervisory personnel cannot be held liable under section 1983 on a theory of *respondeat superior*. They can, however, be held liable for deprivations of constitutional rights resulting from their policies or customs." *Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 610 (9th Cir. 1986) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). "To hold a police department liable for the actions of its officers, the [plaintiff] must demonstrate a constitutional deprivation, and show that the deprivation was visited pursuant to a police department custom or policy." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1087 (9th Cir. 2000). In her second amended complaint, Cloes alleged that Chief Law inadequately investigated allegations made by her and Sharon Jarvis (Jarvis)[1], Hughes's ex-wife, as a part of a widespread policy to ignore accusations of sexual assault made against police officers. The undisputed evidence does not show that such a policy existed and so the district court properly granted summary judgment to the City.

In 2004, Jarvis verbally complained to the City regarding Officer Hughes's conduct; however, Jarvis declined to file a formal complaint against him. Her case was referred to state investigators, but Jarvis filed a statement requesting the investigation be closed. In 2007, Jarvis verbally complained; however, she

---

[1] Sharon Jarvis is no longer a plaintiff in this action.

3

declined to file a formal complaint for a second time.[2] Cloes could not identify any

other women who complained about Officer Hughes prior to August of 2008.

Without evidence of a widespread policy, Cloes is limited to the isolated

facts of her case. *See Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003) ("A

single constitutional deprivation ordinarily is insufficient to establish a

longstanding practice or custom." (internal citation and alterations omitted)

(quoting *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999))). Even assuming

that a policy existed, when Cloes registered her written complaint in August 2008,

the City properly referred the case to an independent outside investigative agency.

Thereafter, the City terminated Officer Hughes. This does not rise to the level of

"deliberate indifference" necessary to invoke *Monell* liability. *See Bd. of Cnty.*

---

[2] Cloes points to the City's policy requiring a written complaint and argues it constitutes deliberate indifference. We are unpersuaded by this argument. Nevada employees are presumed to be "at will," *Am. Bank Stationery v. Farmer*, 799 P.2d 1100, 1101-02 (Nev. 1900); however, Officer Hughes was a union member and the City was required to go through union grievance proceedings with employee complaints. Nevada law requires that an employer have substantial evidence prior to taking adverse employment action for just or good cause. *See Sw. Gas Corp. v. Vargas*, 901 P.2d 693, 701 (Nev. 1995) ("In agreement with the standard as set forth in *Baldwin* and *Braun*, we hold that a discharge for 'just' or 'good' cause is one which is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1) supported by substantial evidence, and (2) reasonably believed by the employer to be true.") The City's policy is consistent with the law.

4

*Comm'rs v. Brown*, 520 U.S. 397, 411 (1997) ("[T]his showing of an instance of inadequate screening is not enough to establish 'deliberate indifference.'").

Cloes fails to show evidence of a constitutional violation. On December 4, 2007, Cloes reported the incident to the police department. That same day, Chief Law visited Cloes twice and provided her with a complaint form. Chief Law informed Cloes that the City could not proceed with an investigation without a formal complaint. Despite this information, Cloes declined to file a formal complaint until August 2008. The City then initiated an investigation, suspended Officer Hughes, and ultimately terminated him. Cloes presents no evidence that Chief Law or other members of the police department failed to investigate or worked to conceal her allegations against Officer Hughes. Accordingly, there is no genuine issue of material fact. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes or ruling on a motion for summary judgment"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial [and] . . . entitle[s] the [moving party] to judgment as a matter of law." (quotations and internal alterations

omitted)).  We hold that the district court properly granted the motion for summary judgment on Cloes's *Monell* claim.

## II.    Federal Conspiracy Claims

Second, we hold that Cloes waived opposition to the decision on her federal conspiracy claims brought pursuant to 42 U.S.C. § 1983 and § 1985.  In her opening brief, Cloes does not specifically address those claims.  "We review only issues which are argued specifically and distinctly in a party's opening brief." *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012) (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994)).

## III.   State Law Claims

Third, we hold that the district court properly granted summary judgment on Cloes's state law tort claims.

### A.     Sexual Assault and Intentional Infliction of Emotional Distress

The district court properly concluded as a matter of law that the City could not be liable for Officer Hughes's sexual assault and intentional infliction of emotional distress under a theory of *respondeat superior*.  Nevada Revised Statute Section 41.745(1) reads:

6

> An employer is not liable for harm or injury caused by the intentional conduct of an employee if the conduct of the employee: (a) Was a truly independent venture of the employee; (b) Was not committed in the course of the very task assigned to the employee; and (c) Was not reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his or her employment.

Nev. Rev. Stat. § 41.745(1).

Cloes fails to raise a genuine issue of material fact as to whether Officer Hughes was truly engaged in an independent venture. *See id.* § 41.745(1)(a). In determining whether something is truly an independent venture, Nevada decisions assess whether the actions are done for the employee's purpose or are performed out of a sense of duty to the employer. *See J.C. Penney Co. v. Gravelle*, 155 P.2d 477, 481-82 (Nev. 1945). In *Gravelle*, the Nevada Supreme Court ruled that a store clerk was on an independent venture when he assaulted a third-party bystander who had attempted to intervene in the pursuit of a shoplifter. *Id.* Though the clerk was on-duty, the court reasoned that he was not employed to commit assault and battery. *Id.* Further, the assault occurred after the clerk retrieved and returned the store's merchandise and after the thief escaped. *Id.* at 481. As such, the court concluded that the clerk acted for his own purposes, not to recover the property but to punish the bystander for interfering. *Id.*; *see also Wood v. Safeway, Inc.*, 121 P.3d 1026, 1035-37 (Nev. 2005) (per curiam) (affirming the

7

district court's order granting summary judgment in favor of a corporate defendant and citing to *Gravelle*).

Like the store clerk in *Gravelle*, Officer Hughes was acting for his own purposes. The undisputed evidence shows he arrived at Cloes's home on December 3, 2007, to deliver his wedding announcement. Cloes's deposition testimony confirmed that she recognized Officer Hughes at the door and invited him in for coffee. Officer Hughes was in uniform, but he had not been called to the home and there was no evidence that personal visits of this nature were part of his job. After he was greeted by his first name and invited to stay for coffee, Officer Hughes mentioned he had a trainee waiting outside and explained that he could not stay for long.

This set of facts is distinguishable from *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175 (Nev. 1996). In *Rockwell*, the Nevada Supreme Court held that there was a genuine issue of material fact as to whether an employee was acting in the scope of his employment when he murdered a tenant at the building where he served as a guard. *Id.* at 1180-81. Though the employee was off-duty, evidence suggested he was actively guarding the premises of the apartment building when he shot his girlfriend and used his work radio to call for help. *Id.* at

8

1181. Further, there was evidence that off-duty guards carried emergency radios and responded to calls. *Id.* "Generally, whether an employee is acting within the scope of his or her employment is a question for the trier of fact, but where undisputed evidence exists concerning the employee's status at the time of the tortious act, the issue may be resolved as a matter of law." *Id.* at 1180. Here, the undisputed evidence establishes that Officer Hughes was on a personal errand to deliver a wedding invitation and was invited to stay for coffee.

Next, Cloes fails to raise a genuine issue of material fact with respect to whether the act was committed in the course of the very task assigned to Officer Hughes. *See* Nev. Rev. Stat. § 41.745(1)(b). Nevada law has narrowly interpreted whether something constitutes the very task assigned to the employee. *See Wood*, 121 P.3d at 1035-37 (concluding that a sexual assault was outside the course and scope of a janitor's employment). As discussed above, Officer Hughes was not called to the scene of Cloes's home. There is no evidence to raise a triable issue as to whether the sexual assault was committed in the course of the very task assigned to Hughes.

Finally, the record reveals no genuine issue of material fact as to the foreseeability of Officer Hughes's actions. The City conducted a background

check and sought a psychological evaluation of Officer Hughes prior to hiring him. Neither investigation revealed any issues regarding Officer Hughes's fitness to be a police officer. There is nothing else in the record to show this misconduct was foreseeable. *See id.* at 1036-37 (reasoning that an employee's conduct was not foreseeable because evidence showed the employer checked the employee's references prior to hiring him and had received no prior complaints).

As such, we hold that the district court properly granted summary judgment on Cloes's claims against the City for sexual assault and intentional infliction of emotional distress under a theory of *respondeat superior*.

### B. Negligent Hiring, Training, and Supervision and Negligent Infliction of Emotional Distress

The district court properly found that Cloes's claims of negligent hiring, training, and supervision were barred by discretionary immunity.

Nevada Revised Statute section 41.032(2) provides an exception to Nevada's statutory waiver of sovereign immunity. *Martinez v. Maruszczak*, 168 P.3d 720, 723 (Nev. 2007). Under section 41.032(2), discretionary immunity precludes an action against an immune contractor or an officer or employee of the State or any of its agencies or political subdivisions that is:

10

> Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

Nev. Rev. Stat. § 41.032(2).

Nevada has "adopt[ed] the two-part federal test . . . for determining when the discretionary-function exception to the general waiver of governmental immunity applies." *Martinez*, 168 P.3d at 722. "[A] decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Id.* at 729.

Nevada looks to federal decisional law for guidance on what type of conduct discretionary immunity protects. *Id.* at 727. "This court and others have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000). Nonetheless, "where an officer's actions are 'attributable to bad faith, immunity does not apply whether an act is discretionary or not.'" *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007) (quoting *Falline v. GNLV Corp.*, 823 P.2d 888, 891 (Nev. 1991)). Additionally, acts that violate the Constitution cannot be

11

viewed as discretionary. *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000).

There is no evidence in the record establishing bad faith or a constitutional violation that would preclude discretionary immunity. The City took precautions when it hired Officer Hughes by interviewing and screening him. After a formal complaint was filed against Officer Hughes, an independent agency conducted an investigation and the City terminated Hughes. Because Nevada looks to Ninth Circuit precedent to determine the scope of discretionary immunity and we have consistently held that training and supervision are acts entitled to such immunity, the City is entitled to discretionary immunity on this claim.

As such, we hold that the district court properly granted summary judgment on Cloes's claims of negligent hiring, training, and supervision and negligent infliction of emotional distress.

**AFFIRMED**.